United States Court of Appeals

For the Eighth Circuit

_____

No. 13-3379

_____

Branden Clark

*Petitioner - Appellant*

v.

Leann K. Bertsch

*Respondent - Appellee*

_____

Appeal from United States District Court
for the District of North Dakota - Fargo

_____

Submitted: November 13, 2014
Filed: March 13, 2015

_____

Before MURPHY, MELLOY, and BENTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

Branden Clark appeals the dismissal of his 28 U.S.C. § 2254 habeas corpus petition. The specific issue before our court is whether a state appellate court's plain-error review of an unpreserved and otherwise procedurally defaulted claim "cures" the default and opens the door for federal collateral review. Panel opinions in our circuit are divided on this issue, and we take this opportunity to retire this intra-circuit

split. Following the earliest panel opinion, as required by the rule announced in Mader v. United States, 654 F.3d 794, 800 (8th Cir. 2011) (en banc), we hold that Hayes v. Lockhart, 766 F.2d 1247, 1253 (8th Cir. 1985), governs in our circuit. Hayes holds a federal habeas court cannot reach an otherwise unpreserved and procedurally defaulted claim merely because a reviewing state court analyzed that claim for plain error. 766 F.2d at 1253. We therefore affirm the judgment of the district court[1] dismissing Clark's habeas petition.

I.      Background

In 2007, while on state probation for 2005 theft offenses, Clark used a company's credit account at an equipment dealer to obtain a portable generator for himself. The company was unrelated to Clark but similarly named, and Clark was without authority to use the account. Based on these events, North Dakota revoked Clark's probation, and, in place of probation, he received a sentence of five years' imprisonment for the 2005 offenses.

The state also prosecuted Clark's 2007 use of the company's account as a new theft-of-property offense, eventually asserting the possibility of habitual offender status. Clark entered into a plea agreement that eliminated the possibility of being sentenced as a habitual offender. After Clark entered into the plea agreement, the state trial court sentenced him to four years' imprisonment, to be served consecutive to his other sentence.

Given the new charges, the revocation of probation, and the sentence imposed for the 2005 offenses, the trial court proceedings were somewhat complicated. At a

---

[1] The Honorable Ralph R. Erickson, Chief Judge for the United States District Court for the District of North Dakota, adopting the report and recommendation of the Honorable Karen K. Klein, Chief Magistrate Judge for the District of North Dakota.

hearing regarding the probation violation and revocation, Clark admitted the 2007 offense conduct. In addition, he signed a criminal judgment for the 2007 offense, stating that he entered a plea of guilty. At no time, however, did he actually enter a plea of guilty for the 2007 offense.

Clark appealed to the North Dakota Supreme Court arguing that he was sentenced without actually entering a guilty plea in the trial court. The North Dakota Supreme Court rejected his argument, finding that the totality of the circumstances evinced an intent to enter a plea of guilty. State v. Clark, 783 N.W.2d 274, 276–77 (N.D. 2010). In an initial federal habeas proceeding, the federal district court granted habeas relief and vacated Clark's conviction and sentence for the 2007 offense because there had been no actual entry of a guilty plea. Clark v. Bertsch, No. 3:10-cv-110, 2011 WL 9977236 (D.N.D. Sept. 12, 2011) ("The fundamental question now before this Court is whether one can be sentenced for a crime to which no plea of guilty has been entered and no trial resulting in a conviction has been held. The answer is no.").

The state and Clark then resumed negotiations which proved unfruitful. Clark subsequently went to jury trial and was convicted on the 2007 theft-of-property charge. He was sentenced with an enhancement for being a habitual offender for a term of imprisonment of eight years (again, to be served consecutive to his other sentence). This new post-jury-trial sentence was twice what he had received under the earlier plea deal.

On appeal from his jury trial, conviction, and sentence in state court, counsel filed a brief on Clark's behalf raising several issues. Clark also filed a pro se brief raising several additional issues including a claim of prosecutorial vindictiveness and a claim that the trial judge was biased. The North Dakota Supreme Court identified the issues Clark raised in his pro se brief as issues that had not been raised at trial.

The North Dakota Supreme Court rejected Clark's pro se claims as not rising to the level of "obvious error," stating:

> These issues were not raised before the district court. This Court will not address issues that are raised for the first time on appeal. However, [a]n obvious error or defect that affects substantial rights may be considered even though it was not brought to the court's attention. We exercise the power to notice obvious error cautiously and only in exceptional circumstances where the defendant has suffered serious injustice. To establish obvious error, the defendant must show plain error existed affecting his substantial rights. The error must be a clear deviation from an applicable legal rule under current law to constitute an obvious error. Here, none of the issues rise to the level of obvious error.

State v. Clark, 818 N.W.2d 739, 746–47 (N.D. 2012) (internal citations and quotation marks omitted).

Clark then filed the present federal habeas petition in which he raised ten claims, including several claims he had raised in his pro se brief to the North Dakota Supreme Court. The district court dismissed as procedurally defaulted the claims that had been raised only in Clark's pro se state court brief. The district court, however granted a certificate of appealability regarding the question of whether the North Dakota Supreme Court's plain-error review could excuse Clark's procedural default. Clark appeals.[2]

---

[2] Clark subsequently moved to expand the certificate of appealability to reach other issues, but an earlier panel of our court denied the motion.

II.    Discussion

The district court's dismissal of Clark's habeas claims as procedurally defaulted rested on a purely legal determination.  As such, we review the judgment below de novo.  See, e.g., Mack v. Caspari, 92 F.3d 637, 641 (8th Cir. 1996).

At trial, Clark neither raised nor preserved the claims later raised in his pro se brief to the North Dakota Supreme Court.  In reviewing only for "obvious error," the North Dakota Supreme Court did not elaborate upon the merits of the claims.  Clark, 818 N.W.2d at 746–47.  The court, however, referred to the obvious-error standard as requiring Clark to show an error that was plain, affected substantial rights, and resulted in serious injustice.  Id. at 747.  The court also described obvious-error review as discretionary.  Id. (noting that unpreserved error "*may* be considered" but that the  "power to notice obvious error" must be exercised "cautiously and only in exceptional circumstances") (emphasis added).   We understand this standard to be akin to our familiar standard for plain-error review.

The parties correctly identify a split of panel authority in our circuit regarding the effect of a state appellate court's plain-error review of an otherwise procedurally defaulted claim.  See, e.g., Shelton v. Purkett, 563 F.3d 404, 408 (8th Cir. 2009) ("Unfortunately, there exists an oft-noted, yet surprisingly persistent, split of authority in our circuit about whether plain error review 'cures' the procedural default."); Mack, 92 F.3d at 641 n.6 ("There appears to be a decisional split within our Circuit on whether plain-error review by a state appellate court waives a procedural default by a habeas petitioner, allowing collateral review by this Court.").  Compare Toney v. Gammon, 79 F.3d 693, 699 (8th Cir. 1996) (holding state's plain-error review does not cure procedural default, and federal court may review only if cause and prejudice demonstrated), and Hayes v. Lockhart, 766 F.2d 1247, 1253 (8th Cir. 1985) (same); with Thomas v. Bowersox, 208 F.3d 699, 701 (8th Cir. 2000) (holding state's plain-error review of procedurally-barred claim allows later consideration in federal court),

and Bannister v. Armontrout, 4 F.3d 1434, 1445 n.16 (8th Cir. 1993) (same, but noting "[w]e do not suggest that in every case plain-error review is sufficient to permit federal habeas review"), and Williams v. Armontrout, 877 F.2d 1376, 1379 (8th Cir. 1989) (same).

Prior to our court's en banc decision in Mader v. United States, 654 F.3d 794 (8th Cir. 2011), panels in the Eighth Circuit were permitted to choose which line of authority to follow in the event of an intra-circuit panel split. See, e.g., Kilmartin v. Dormire, 161 F.3d 1125 (8th Cir. 1998) (noting the "decisional split" on this procedural bar issue and stating, "Given the divergence within this circuit, we are free to choose which line of cases to follow. We choose to review for plain error, *i.e.*, to determine whether manifest injustice resulted from the faulty instruction.") (internal citation omitted). Our en banc court, however, clearly put this rule to rest; the court directed that future panels are to determine and follow the earliest precedent in the event of an intra-circuit panel split. Mader, 654 F.3d at 800 ("We definitively rule today, in accordance with the almost universal practice in other federal circuits, that when faced with conflicting panel opinions, the earliest opinion must be followed as it should have controlled the subsequent panels that created the conflict.") (internal citation and quotation marks omitted).

Here the earliest and controlling panel opinion of Hayes, 766 F.2d at 1253, provides the rule we must apply. In Hayes, a habeas petitioner sought federal review of an unpreserved challenge to a jury instruction. Id. at 1252–53. The state supreme court had analyzed the claim applying a plain-error standard, and the petitioner sought federal collateral review under a plain-error standard. The state argued that a federal court on collateral review could reach a procedurally defaulted claim only if the prisoner could demonstrate cause for, and actual prejudice resulting from, the default. Our court held the claim procedurally barred and unreviewable, stating:

The Supreme Court has refused to replace or supplement the "cause-and-prejudice" standard with a plain-error inquiry. The burden of justifying federal habeas relief for state prisoners is greater than the "plain error" showing required on direct appeal. Thus, the district court properly concluded that Hayes was not entitled to an independent determination of the improper instruction issue.

Id. at 1253 (quoting Engle v. Isaac, 456 U.S. 107, 134–35 (1982)).[3]

Because the state court's discretionary plain-error review of Clark's unpreserved claims cannot excuse his procedural default, we affirm the judgment of the district court.

_____

[3] It appears Williams, 877 F.2d at 1379, served as the genesis of our court's competing line of panel authority. There, a panel of our court held a state court's discretionary plain-error review of an unpreserved claim removed any procedural bar to federal collateral review. In reaching this result, the Williams panel relied upon a Supreme Court footnote from Engle. Id. The Supreme Court's footnote stated, "If [the state] had exercised its discretion to consider respondents' claim, then their initial default would no longer block federal review." Engle, 456 U.S. at 135 n.44. This footnote from Engle, however, was dicta. The Court in Engle had simply reaffirmed that, before a federal court may conduct collateral review of a state prisoner's procedurally defaulted claim, the prisoner must show cause and prejudice to excuse the default. Id. at 129 ("We reaffirm, therefore, that any prisoner bringing a constitutional claim to the federal courthouse after state procedural default must demonstrate cause and actual prejudice before obtaining relief."). In any event, the rationale behind the competing lines of authority is of little consequence for our task today. Mader defines the scope of our authority as a panel, and Mader requires that our panel follow the earliest precedent in the intra-circuit split.