# United States Court of Appeals
### For the Eighth Circuit

_____

No. 19-2763
_____

Leonard S. Taylor

*Petitioner - Appellant*

v.

Troy Steele

*Respondent - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: December 15, 2020
Filed: July 26, 2021

_____

Before SMITH, Chief Judge, LOKEN and MELLOY, Circuit Judges.

_____

SMITH, Chief Judge.

Leonard S. Taylor claimed in a petition for a writ of habeas corpus that his trial counsel was ineffective for not providing closing argument during the penalty phase of his capital-murder trial. The district court[1] denied relief.

_____

[1]The Honorable Rodney W. Sippel, Chief Judge, United States District Court for the Eastern District of Missouri.

Taylor, though advised otherwise, insisted that his trial counsel forgo closing argument. Taylor's informed, voluntary decision thus prevented his counsel's reluctant compliance with Taylor's wishes from subsequently becoming ineffective assistance of counsel. The nature of the decision to forgo closing argument, whether fundamental or one of trial strategy,[2] does not alter this result. Taylor's ineffective-assistance-of-counsel claim is procedurally defaulted and therefore barred. Thus, we affirm the district court's denial of the petition.

## I. *Background*

In 2004, police found Taylor's girlfriend Angela Rowe and her three children dead inside their home. Missouri charged Taylor with four counts of first-degree murder and four counts of armed criminal action for the killings of Rowe and her children. While awaiting trial for their murders, Taylor was convicted on an unrelated charge of forcible rape and sentenced to 100 years' imprisonment without parole. *See State v. Taylor*, 238 S.W.3d 145 (Mo. 2007) (en banc).

The jury for Taylor's murder trial convicted him on all counts. The next day, the jury reconvened for the penalty phase of the trial. The state presented evidence of Taylor's prior convictions, testimony from the victim in the forcible-rape conviction, and testimony from Rowe's and her children's family.

For the defense, Taylor's trial team—at his insistence—did not present closing argument during the penalty phase. And the only mitigating evidence that it presented was one stipulation as to Taylor's good behavior in prison. Twice, the state trial court questioned Taylor's decisions during the penalty phase:

---

[2]In *McCoy v. Louisiana*, the Supreme Court distinguished between choices that constitute trial strategy and those that "are reserved for the client." 138 S. Ct. 1500, 1508 (2018). In this opinion we refer to decisions "reserved for the client" as "fundamental decisions." *Id.* at 1507, 1508 (quoting *Cooke v. State*, 977 A.2d 803, 842 (Del. 2009)).

THE COURT: Mr. Taylor, do you want to come up with your lawyers?

(Whereupon the attorneys approached the bench and the following occurred outside the hearing of the jury.)

THE COURT: Mr. Taylor, we're about to proceed with this, the second stage of the trial, the punishment phase on the jury's finding of guilt to four counts of Murder in the First Degree. Just a few moments ago I was approached by your attorneys who indicated to me that you have instructed them in this phase of the trial that you do not want them to—well, let me ask you, first, you've given them certain instructions about how you want them to conduct this second phase of the trial. Why don't you tell me what it is that you told them, what limitations you're putting on them.

THE DEFENDANT: I have instructed my attorneys not to argue anything in this portion of the trial, this penalty phase. As a Muslim we do not ask for other men something they cannot give us or take from us. I would never ask another man or jurors for a dime which they could give me, and being that I definitely wouldn't ask them for my life, which they can't take nor can they give. Only Allah can do that. So to concede to that would be giving them a false sense of authority they don't have. Neither they have that nor you. And if it's Allah's will I'll die tonight, tomorrow, fifty years from now.

THE COURT: The second phase procedure following the second phase, both sides, the State and your lawyers are allowed to make opening statements. And the opening statements are basically confined to what they expect to present as evidence in this second phase of the trial. It's my understanding, and I'll direct this to [trial counsel], you do have some evidence that you were going [to] present on behalf of Mr. [Taylor]; is that correct?

[TRIAL COUNSEL]: Well, I've discussed this with Mr. Taylor and I think he is okay with us basically indicating [to] the jury not much more than we do have some evidence by stipulation regarding his behavior while incarcerated, and think he's indicated he's okay with that.

THE COURT: And that's correct?

-3-

THE DEFENDANT: That's the only thing I will allow them to enter into stipulation as to whatever my conduct has been while incarcerated, or so forth. So on that matter not either—whatever else will be.

THE COURT: Once the evidence has been concluded then both sides are going to have an opportunity to argue this case and argue—I guess they'll argue the evidence that has been presented. And I'm sure if it follows, the course followed in the past, the State will be asking the jury to impose the death penalty. Your lawyers, if allowed, would ask the jury to spare your life. Are you asking them not to do that?

THE DEFENDANT: Your Honor, I would never ask another man not to do something they have no power to do. Only Allah can spare my life, only Allah gave me life. So if they impose a death sentence that means nothing to me, okay?

THE COURT: I understand. The position you're taking is going to severely hamper your attorneys in their efforts to try to spare your life, do you understand that?

THE DEFENDANT: I'm not going—I wouldn't ask you to spare my life, I would not allow them to do that because you have no power to do that, you have no power to take my life.

THE COURT: I guess my question to you, do you understand you're really hamstringing them in terms of presenting a defense for you?

THE DEFENDANT: What I understand is this here, Your Honor, I'm leaving the power of life and death in the hands of Allah who's the only person who has that power. It would not be the prosecutor, no juror, no one else for my life, only Allah can give that, only Allah can take that. At birth every man was sentenced to death, it may be a day, it may be a year, it may be a hundred [years], but you're guaranteed to die, you know, so we're not afraid of that if it be that. It may not be that.

THE COURT: It is your decision, I'm satisfied it's not a decision forced on you by anybody. You're taking this position through your own volition and this is your decision; is that correct?

THE DEFENDANT: I'm a Muslim.

THE COURT: I understand.

THE DEFENDANT: And as we establish ourselves through positive action and live by that, whatever the course may be, and we except [sic] that. Now if they want to argue for death, go ahead, but we're not going to beg them or anybody else.

THE COURT: I want this record to be perfectly clear this is your decision.

THE DEFENDANT: It's my decision. It's a last decision.

THE COURT: You've gone through and communicated to your lawyers and now you've communicated to me it is your decision.

THE DEFENDANT: Yes, sir.

THE COURT: All right.

THE DEFENDANT: Ma sha Allah.

*Taylor v. Steele*, 372 F. Supp. 3d 800, 861–62 (E.D. Mo. 2019) (sixth alteration not in original). After a second colloquy with the court clarifying Taylor's instructions to counsel, defense counsel read into evidence the written stipulation describing Taylor's good behavior while incarcerated.

The jury recommended the death penalty on each first-degree murder count, and the state trial court sentenced Taylor to death on each murder charge and imposed consecutive sentences of life imprisonment on the armed criminal action charges. Taylor filed a direct appeal to the Missouri Supreme Court, which affirmed. Taylor also moved for postconviction relief that the postconviction court denied. He then appealed the denial to the Missouri Supreme Court, and it affirmed the post-conviction court.

Taylor then petitioned the federal district court for a writ of habeas corpus based on eight grounds. The district court rejected his arguments but granted Taylor a certificate of appealability on a single issue: whether Taylor received constitutionally ineffective assistance of counsel when his trial counsel followed his directive to forgo closing argument during the penalty phase of his trial. Taylor appeals the district court's denial of relief on this basis.

## II. *Discussion*

"We review de novo the question whether [a] claim is procedurally defaulted." *Stephen v. Smith*, 963 F.3d 795, 800 (8th Cir. 2020) (alteration in original) (emphasis omitted) (quoting *Kemp v. Kelley*, 924 F.3d 489, 499 (8th Cir. 2019)). The first time that Taylor raised the certified ineffective-assistance claim was in his federal habeas petition. The parties agree that Taylor's failure to raise it in his state postconviction motion defaulted his claim.

Federal courts generally cannot "review [the] claims that a habeas petitioner has defaulted in state court" unless the claim satisfies the *Martinez v. Ryan*[3] exception to procedural default. *Harris v. Wallace*, 984 F.3d 641, 647–48 (8th Cir. 2021). Under the exception, Taylor may overcome the default if: (A) "the state collateral review proceeding was the 'initial' review proceeding with respect to the 'ineffective-assistance-of-trial-counsel claim'"; (B) the ineffective-assistance claim is "substantial"; and (C) postconviction counsel's ineffectiveness was the "cause" for the default. *Id.* at 648 (quoting *Kemp*, 924 F.3d at 499).

### A. *Initial-Review Collateral Proceeding*

Taylor satisfies the first requirement because his postconviction motion was his first opportunity to raise an ineffective-assistance claim. *See id.* ("Missouri 'prevent[s] individuals from pursuing claims of ineffective assistance of trial counsel on direct appeal,' requiring instead that they make such claims in a post-conviction,

---

[3]566 U.S. 1 (2012).

'initial-review collateral proceeding.'" (alteration in original) (quoting *Franklin v. Hawley*, 879 F.3d 307, 312 (8th Cir. 2018))).

## B. *Substantiality of Claim*

Next, Taylor's underlying claim for ineffective assistance of trial counsel must be substantial. *See id.* To be substantial, "the prisoner must demonstrate that the claim has some merit." *Id.* (quoting *Martinez*, 566 U.S. at 14). This means that whether Taylor's trial counsel was ineffective under *Strickland v. Washington*[4] must at least be "debatable among jurists of reason." *Harris*, 984 F.3d at 648–49 (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003)).

Thus, whether Taylor has a substantial claim for ineffective assistance of trial counsel depends on his ability to show two things: (1) Taylor's trial counsel's performance was deficient, and (2) his counsel's deficient performance prejudiced him. *See Strickland*, 466 U.S. at 687. Counsel's performance is deficient when his representation falls "below an objective standard of reasonableness." *Barnett v. Roper*, 904 F.3d 623, 631 (8th Cir. 2018) (quoting *Slocum v. Kelley*, 854 F.3d 524, 532 (8th Cir. 2017)). Upon review, we affirm because Taylor cannot show that his trial counsel's performance was deficient.

The parties and the district court addressed the question whether a trial counsel's decision to forgo closing argument is a trial strategy or fundamental decision within the control of the defendant.[5] Taylor seeks to avoid a procedural bar

---

[4]466 U.S. 668 (1984).

[5]The district court framed the issues for appeal as: (1) "whether the decision to forego a closing argument at the penalty stage of a capital murder trial is a tactical decision for counsel or a basic trial right decision for the defendant"; and (2) "[i]f it is a tactical decision, is trial counsel constitutionally ineffective for complying with defendant's request to not make a closing argument at the penalty stage of a capital murder trial." Certificate of Appealability at 1, *Taylor v. Steele*, No. 4:12-cv-02278-RWS (E.D. Mo. 2019), ECF No. 53.

to his ineffective-assistance claim by contending that the decision to present or forgo closing argument was a matter of trial strategy and not a fundamental decision. As such, Taylor's trial counsel had the ultimate decisionmaking power whether to give a closing argument during the penalty phase. According to Taylor, because trial counsel had the ultimate decisionmaking power, counsel erred by following his client's directive instead of deciding in the best interest of his client. In essence, Taylor argues that, though trial counsel will not be ineffective for abiding by his client's directives regarding fundamental decisions, trial counsel can be ineffective for abiding by his client's directives when the decision pertains to trial strategy. *See* Appellant's Br. at 30–32.

Unlike decisions pertaining to trial strategy, fundamental decisions require client approval. *See McCoy*, 138 S. Ct. at 1508; *Florida v. Nixon*, 543 U.S. 175, 187 (2004) (explaining that, though counsel "undoubtedly has a duty to consult with the client regarding 'important decisions,' including questions of overarching defense strategy," counsel also "has authority to manage most aspects of the defense without obtaining his client's approval" (first quoting *Strickland*, 466 U.S. at 688; and then citing *Taylor v. Illinois*, 484 U.S. 400, 417–18 (1988))). Fundamental decisions, thus, undergird autonomy claims, which protect criminal defendants by preventing their counsel from making certain important decisions without their input. *See McCoy*, 138 S. Ct. at 1508 (explaining that "a defendant need not surrender control entirely to counsel" because counsel, "however expert, is still [only] an assistant" (quoting *Faretta v. California*, 422 U.S. 806, 820 (1975))); *see also Thomas* v. Payne, 960 F.3d 465, 471, 474, 476 (8th Cir. 2020) (distinguishing between ineffective-assistance claims and a "*McCoy* Sixth Amendment Violation").

As such, fundamental decisions must be in accord with the client's wishes. Trial strategies, on the other hand, are largely in the hands of legal counsel. *See McCoy*, 138 S. Ct. at 1508. But contrary to Taylor's characterization, the distinction does not resolve whether counsel is ineffective when he has *followed* the defendant's

directions. *Cf. id.* at 1510–11 (refusing to apply Supreme Court ineffective-assistance-of-counsel jurisprudence because the "client's autonomy, not counsel's competence, [wa]s in issue").

Fundamental decisions require client approval, and matters of legal strategy are generally left to counsel; but that does not mean trial-strategy decisions are impervious to a client's express prohibition. *Cf. id.* at 1508 ("Trial management is the lawyer's province: Counsel provides his or her assistance by making decisions such as what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence. Some decisions, however, are reserved for the client—notably, whether to plead guilty, waive the right to a jury trial, testify in one's own behalf, and forgo an appeal." (cleaned up)). Although counsel may violate a defendant's right to autonomy by deciding "certain fundamental decisions regarding the case" without the defendant's "ultimate authority," *see Jones v. Barnes*, 463 U.S. 745, 751 (1983), it does not follow that counsel violates a defendant's right to effective counsel by *yielding to* the defendant's ultimate authority in either a trial strategy or a fundamental decision. Thus, the distinction, here, is immaterial.

Contrary to Taylor's assertions, neither *Nixon* nor *McCoy* stands for the proposition that counsel must disregard a competent client's express directions on certain decisions to be effective. *Nixon* permits an attorney to proceed with a course of action, without being held ineffective, after communicating to a client who is unresponsive. See generally *Nixon*, 543 U.S. 175. It addresses the circumstance where an attorney has communicated with his client but has not been given any directions from the client. Id. By contrast, *McCoy* prohibits an attorney from disregarding his client's directives as to fundamental decisions. *McCoy*, 138 S. Ct. at 1509 ("When a client expressly asserts that the objective of *his* defence is to maintain innocence of the charged criminal acts, his lawyer must abide by that objective and may not override it by conceding guilt." (cleaned up)). Accordingly, *McCoy* addresses when

-9-

a client has given his counsel directions but counsel ignores those directions. See id. Here, the client gave his counsel express directions, but, unlike in *McCoy*, counsel acquiesced.

Moreover, Taylor's counsel's acquiescence to Taylor's directions, on this record, was neither a trial strategy nor the absence of one. It was counsel doing as his client instructed after counsel and the court informed Taylor of the potential consequences of his decision. Counsel did not waive argument as a strategy but as a consequence of Taylor's decision to forgo the opportunity to have counsel speak on his behalf in opposition to the punishment under consideration.

Ultimately, the case is the client's, and "[i]t is the role of the lawyer to be a professional advisor and advocate, not to usurp his client's decisions concerning the objectives of representation." *United States v. Wellington*, 417 F.3d 284, 289 (2d Cir. 2005) (cleaned up). We thus hold that Taylor's assertion that his trial counsel was ineffective by not giving closing argument—at Taylor's direction—lacks merit. *Cf. id.* ("[T]o the extent that defendant instructed his counsel to pursue a course of action that defendant now complains of, there was no abridgement—constructive or otherwise—of defendant's Sixth Amendment right to effective assistance of counsel.").[6]

_____

[6]*Cf. Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) ("[A] defendant who explicitly tells his attorney *not* to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently."); *Frye v. Lee*, 235 F.3d 897, 906–07 (4th Cir. 2000) (refusing to hold trial counsel ineffective when the defendant directed his lawyers to "not to allow his family to aid in mitigation" despite his lawyers' "repeated" explanation of the possible consequences thereof); *United States v. Masat*, 896 F.2d 88, 90, 92 (5th Cir. 1990) (rejecting a defendant's ineffective-assistance-of-counsel claim though his counsel "generally pursued a course of defense that seemed likely to lose the case" because that "course was in accordance with [the defendant's] wishes"; it was "apparent" that the defendant was asking the court "to permit a defendant to avoid conviction on the ground that his lawyer did exactly what he asked him to do"); *Mulligan v. Kemp*, 771 F.2d 1436,

This record shows counsel advised Taylor of the consequences of his directive to counsel to provide no closing argument during the penalty phase of trial. Based on the court's colloquy and counsel's advice, Taylor made his choice with eyes open. *See Faretta*, 422 U.S. at 835 ("Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942))). Taylor has not asserted he lacked competence at the time he directed counsel to forgo closing argument.

This outcome allows a defendant to make choices to his own detriment. But the Supreme Court has similarly stated (in the context of allowing defendants to refuse assistance of counsel altogether):

> The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction. It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of "that respect for the individual which is the lifeblood of the law."

*Id.* at 834 (quoting *Illinois v. Allen*, 397 U.S. 337, 350–51 (1970) (Brennan, J., concurring)); *see also Weaver v. Massachusetts*, 137 S. Ct. 1899, 1908 (2017) (explaining that, although self-representation often increases the likelihood of an unfavorable outcome, the "right is based on the fundamental legal principle that a defendant must be allowed to make his own choices about the proper way to protect

---

1442 (11th Cir. 1985) ("[I]f [counsel] is commanded by his client to present a certain defense, and if he does thoroughly explain the potential problems with the suggested approach, then his ultimate decision to follow the client's will may not be lightly disturbed.").

his own liberty"); *Martinez v. Ct. of Appeal of Cal.*, 528 U.S. 152, 165 (2000) (Scalia, J., concurring) ("Our system of laws generally presumes that the criminal defendant, after being fully informed, knows his own best interests and does not need them dictated by the State.").

## C. *Postconviction Counsel*

Last, Taylor would also have to show that his postconviction counsel was ineffective for failing to raise this ineffective-assistance-of-trial-counsel claim. But, seeing as Taylor has not shown that his underlying ineffective-assistance claim is substantial, we do not reach the third requirement of the *Martinez* exception.

## III. *Conclusion*

Taylor's counsel was not ineffective for abiding by his client's informed directive not to present a closing argument, whether construed as trial strategy or as a fundamental decision. Accordingly, we affirm the district court because Taylor's underlying ineffective-assistance claim lacks merit, procedurally barring his claim.

_____