# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-2099
_____

Brian J. Dorsey

*Petitioner - Appellant*

v.

David Vandergriff

*Respondent - Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: January 12, 2022
Filed: April 7, 2022

_____

Before LOKEN, GRUENDER, and GRASZ, Circuit Judges.

_____

GRUENDER, Circuit Judge.

A jury sentenced Brian J. Dorsey to death for murdering his cousin and her husband. After unsuccessfully challenging his sentence on direct appeal and in state postconviction proceedings, Dorsey petitioned the district court[1] for a writ of *habeas corpus*. The district court denied the petition, and a panel of this court granted a

_____

[1]The Honorable Roseann Ketchmark, United States District Judge for the Western District of Missouri.

certificate of appealability on the question whether Dorsey could overcome the procedural default of his claim that his trial attorneys were ineffective for failing to investigate and present evidence of his adjustment to incarceration. We affirm.

## I.

Two days before Christmas 2006, drug dealers arrived at Brian Dorsey's apartment in Jefferson City, Missouri demanding payment on a debt that Dorsey owed them. Dorsey called his cousin, Sarah Bonnie, for help. Sarah and her husband, Ben, went to Dorsey's apartment. Ben entered the apartment and stayed until the drug dealers left. Ben and Sarah then drove Dorsey to their home to spend the night with them and their four-year-old daughter. During the night, Dorsey raped Sarah and murdered her and Ben with their shotgun. Ben, a mechanic, had been in the process of fixing Dorsey's car for free, so Dorsey escaped in Sarah's car. He took two firearms, jewelry, electronics, and other personal property of the Bonnies. Dorsey attempted to use these items to repay his drug debt.

Dorsey turned himself in a few days later and, after being read his *Miranda* rights, confessed. When charged with murdering Sarah and Ben, he pleaded guilty. The State sought the death penalty.

Missouri Department of Corrections records existing at the time of the sentencing trial indicated that, in many respects, Dorsey was adjusting well to incarceration. For example, one form indicated that he was "[r]espectful of others," "[a]void[ed] fights unless directly challenged," and was "[c]ooperative with staff." That said, the evidence of Dorsey's adjustment was not unequivocally positive: The same form indicated that Dorsey "[h]ad difficulties with free time," was not "[d]ependable in assignments," and was "[s]luggish." And another form indicated that Dorsey had not "[e]xpressed need for self-improvement," had "[d]efied authority," had not "[a]ccepted responsibility for his situation," and was "[s]elf-centered."

At sentencing, Dorsey was represented by two attorneys with experience handling capital cases. They did not present—or, according to Dorsey, even investigate—evidence of his adjustment to incarceration. Instead, given the nature of the crimes and the fact that "some of the aggravating factors were not really defendable," Dorsey's attorneys focused on trying to convince the jury that "this was an aberration for [Dorsey]; that he had a history of being a good person, and that he had some things in him that a jury could connect to."

The jury returned a verdict of death for each murder. It found seven aggravating factors beyond a reasonable doubt. The trial court entered judgment on the verdicts, and the Missouri Supreme Court affirmed on direct appeal. *State v. Dorsey*, 318 S.W.3d 648, 651 (Mo. 2010). Dorsey sought postconviction relief in state court, and counsel was appointed to represent him. Although Dorsey raised numerous other claims, he did not argue that his trial attorneys were ineffective for failing to investigate and present evidence of his adjustment to incarceration. The state court denied postconviction relief, and the Missouri Supreme Court affirmed. *Dorsey v. State*, 448 S.W.3d 276, 282, 301 (Mo. 2014). Dorsey then petitioned the district court for a writ of *habeas corpus* under 28 U.S.C. § 2254, raising twenty-eight claims, including a claim that his trial attorneys were ineffective for failing to investigate and present evidence of his adjustment to incarceration. More than three years later, while his § 2254 petition remained pending, Dorsey asked to expand the record to include an affidavit from an investigator who averred that law enforcement and corrections officials who knew Dorsey spoke highly of him and an affidavit from a psychologist who opined that Dorsey would likely adjust well in prison.

The district court denied the petition. It concluded that Dorsey's ineffective-assistance claim was procedurally defaulted because Dorsey did not raise it during state postconviction proceedings and that Dorsey could not overcome the procedural default under *Martinez v. Ryan*, 566 U.S. 1, 14 (2012), because the claim was insubstantial. The district court also denied Dorsey's motion to expand the record, noting that the new evidence consisted largely of hearsay.

Dorsey applied for a certificate of appealability, which a panel of this court granted as to the following question: "Under Martinez v. Ryan, 566 U.S. 1 (2012), did the district court err in concluding that Dorsey's ineffective-assistance-of-trial-counsel claim based on trial counsel's alleged failure to investigate and present evidence of Dorsey's good conduct while in custody is insubstantial and is thus procedurally defaulted?"

## II.

We review *de novo* whether a claim of ineffective assistance of trial counsel is substantial under *Martinez*. *See Deck v. Jennings*, 978 F.3d 578, 581 (8th Cir. 2020). Subject to exceptions inapplicable here, *see Gray v. Netherland*, 518 U.S. 152, 165-66 (1996); *Murray v. Carrier*, 477 U.S. 478, 496 (1986), a federal court may hear a procedurally defaulted claim for postconviction relief only if the petitioner shows "cause" for and "prejudice" from the procedural default, *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). In *Coleman v. Thompson*, the Supreme Court held that because there is no Sixth Amendment right to postconviction counsel, ineffective assistance of postconviction counsel generally does not constitute cause for procedural default. 501 U.S. 722, 752 (1991). But the Court carved out an exception to this rule in *Martinez*, where it held that state postconviction counsel's ineffectiveness constitutes "cause" excusing procedural default if it consisted of a failure to assert a "substantial" claim of ineffective assistance of trial counsel. 566 U.S. at 14. A "substantial" claim is one with "some merit." *Id.* (citing *Miller-El v. Cockrell*, 537 U.S. 322 (2003)).

Here, Dorsey concedes that his claim is procedurally defaulted because he failed to raise it in state postconviction proceedings. To show cause, he attributes his failure to raise his claim in state postconviction proceedings to the ineffective assistance of his state postconviction counsel. Accordingly, *Martinez* requires Dorsey to show that his underlying claim of ineffective assistance of trial counsel has "some merit." *See id.*

The parties disagree about what it means for a claim of ineffective assistance of trial counsel to have "some merit." Dorsey argues that it means a reasonable jurist could believe that or find it debatable whether trial counsel was ineffective. In support of this view, Dorsey notes that *Martinez* followed its holding that "is substantial" means "has some merit" with a "*cf.*" cite to *Miller-El*'s description of the "standards for certificates of appealability to issue." *Martinez*, 566 U.S. at 14. *Miller-El* held that 28 U.S.C. § 2253(c)(2)'s requirement that the claim the applicant seeks to appeal must be "substantial"—the same term used by *Martinez*, 566 U.S. at 14—means that the court of appeals should issue a certificate of appealability only if "reasonable jurists would find the district court's [rejection of the claim] debatable or wrong." *Miller-El*, 537 U.S. at 336-38. Dorsey cites cases from this circuit and other circuits that support his view. *E.g.*, *Harris v. Wallace*, 984 F.3d 641, 648-49 (8th Cir. 2021); *Hittson v. GDCP Warden*, 759 F.3d 1210, 1269-70 (11th Cir. 2014).

The district court disagreed, concluding that *Martinez*'s substantiality standard and *Miller-El*'s certificate-of-appealability standard "are two different standards." According to the State, our decisions in *Ward v. Hobbs*, 738 F.3d 915 (8th Cir. 2013), and *Dansby v. Hobbs*, 766 F.3d 809 (8th Cir. 2014), compel this conclusion. The State argues that *Ward* and *Dansby* control over any out-of-circuit or later Eighth Circuit caselaw supporting Dorsey's view. *See Clark v. Bertsch*, 780 F.3d 873, 876 (8th Cir. 2015) ("[P]anels are to determine and follow the earliest precedent in the event of an intra-circuit panel split.").

We agree with Dorsey. In *Taylor v. Steele*, we stated that *Martinez*'s some-merit requirement "means that whether [the claimant's] trial counsel was ineffective . . . must at least be debatable among jurists of reason." 6 F.4th 796, 801 (8th Cir. 2021) (internal quotation marks omitted), *petition for cert. filed*, --- U.S.L.W. --- (U.S. Mar. 23, 2022) (No. 21-7449); *see also Harris*, 984 F.3d at 648-49; *accord McGill v. Shinn*, 16 F.4th 666, 698-99 (9th Cir. 2021); *Owens v. Stirling*, 967 F.3d 396, 424 (4th Cir. 2020); *Workman v. Superintendent Albion SCI*, 915 F.3d 928, 937-38 (3d Cir. 2019); *Brown v. Brown*, 847 F.3d 502, 517 (7th Cir. 2017); *Hittson*, 759 F.3d at 1269-70. *Ward* and *Dansby* do not compel a contrary conclusion. In

*Ward*, we did not even quote, much less elaborate on, *Martinez*'s statement that the petitioner's ineffective-assistance claim must have "some merit," 566 U.S. at 14, if he is to overcome procedural default. *See Ward*, 738 F.3d 915. And in *Dansby*, we acknowledged but neither endorsed nor rejected the petitioner's argument that *Martinez*'s substantiality standard is identical to *Miller-El*'s certificate-of-appealability standard. *See Dansby*, 766 F.3d at 840 n.4 (noting that the case's outcome did not depend on whether the petitioner was correct). Therefore, *Ward* and *Dansby* do not undermine *Taylor*'s authority.

Although the district court erred by treating *Martinez*'s substantiality standard as different from *Miller-El*'s certificate-of-appealability standard, we will disregard the error if it was harmless. *See Boysiewick v. Schriro*, 179 F.3d 616, 622 (8th Cir. 1999) (affirming the denial of a certificate of appealability on a § 2254 petition on the ground that "any error the District Court committed was harmless"); *Thompson v. Mo. Bd. of Probation & Parole*, 39 F.3d 186, 189 n.2 (8th Cir. 1994) (noting that the appellate court may affirm the dismissal of a § 2254 petition on "a ground other than one relied on by the District Court"); Fed. Habeas Corpus R. 12 ("The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules."); Fed. R. Civ. P. 61 (directing courts to disregard harmless errors). For the reasons explained below, we conclude that the error was harmless because Dorsey's ineffective-assistance claim is insubstantial even under the correct standard.[2]

---

[2]Dorsey argues that, by granting a certificate of appealability, we already decided that his claim meets *Miller-El*'s standard. "When a claim is dismissed based on procedural default, a certificate should be granted only where there is a debatable constitutional claim and a debatable procedural ruling." *Dansby*, 766 F.3d at 840 n.4 (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Here, the constitutional claim is that Dorsey's trial attorneys were ineffective. Therefore, Dorsey is correct that, in granting a certificate of appealability, we implicitly decided that reasonable jurists could believe that or find debatable whether Dorsey's trial attorneys were ineffective. *See Owens*, 967 F.3d at 424. But the merits panel is not bound by the "preliminary" assessment of a petitioner's claims implicit in the prior panel's grant of a certificate of appealability. *See id.* at 425. "[O]ur conclusion that [Dorsey's]

A claim of ineffective assistance of counsel has both a performance prong and a prejudice prong. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The performance prong requires the claimant to overcome a "'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance" by showing that counsel's performance not just "deviated from best practices" but "amounted to incompetence." *Harrington v. Richter*, 562 U.S. 86, 104-05 (2011) (quoting *Strickland*, 466 U.S. at 688-89). The prejudice prong requires the claimant to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 104 (quoting *Strickland*, 466 U.S. at 694). Although a "reasonable probability" of a different outcome but for counsel's errors does not entail that counsel's errors "more likely than not altered the outcome," "the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'" *Id.* at 111-12 (quoting *Strickland*, 466 U.S. at 697).

Here, no reasonable jurist could believe that or find it debatable whether *Strickland*'s performance prong is met. In light of the horrific nature of Dorsey's crimes, it was reasonable for Dorsey's trial attorneys to focus on portraying the crimes as "an aberration" in Dorsey's "history of being a good person," rather than on how Dorsey was adjusting to incarceration. True, evidence that Dorsey was adjusting well to incarceration might incline a jury motivated primarily by incapacitation or rehabilitation away from a capital sentence. But it was reasonable to expect that Dorsey's crimes would elicit retributivist reactions from jury members, and evidence that Dorsey was adjusting well to incarceration might incline a jury motivated primarily by retribution or deterrence *toward* a capital sentence. Furthermore, a jury motivated primarily by incapacitation or rehabilitation would be unlikely to recommend a capital sentence anyway. Thus, Dorsey's trial attorneys "could have reasonably concluded" that the best chance of securing a noncapital sentence was to mitigate retributivist impulses by portraying the crimes as not in keeping with Dorsey's character and that presenting evidence of Dorsey's

---

ineffective-assistance claim[ is] not 'substantial' may be construed as the revocation of the [certificate of appealability]." *See Dansby*, 766 F.3d at 840 n.4.

adjustment to incarceration "would have only detracted from" this effort. *See Deck*, 978 F.3d at 584. And if counsel's decisions were "reasonable," then "[r]easonable jurists would find it undebatable that" counsel's performance did not amount to incompetence. *McGill*, 16 F.4th at 699; *see also Deck*, 978 F.3d at 584. Therefore, no reasonable jurist could believe that or find it debatable whether Dorsey can meet *Strickland*'s performance prong. *Cf. Wiggins v. Smith*, 539 U.S. 510, 533 (2003) ("*Strickland* does not require counsel to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing."); *Schumacher v. Hopkins*, 83 F.3d 1034, 1036-37 (8th Cir. 1996) ("In considering [*Strickland*'s] first prong, we must defer to counsel's strategic decisions and must not succumb to the temptation to be Monday morning quarterbacks."); *Jenkins v. Comm'r, Ala. Dep't of Corr.*, 963 F.3d 1248, 1258, 1269 n.10 (11th Cir. 2020) (holding that the state court reasonably concluded that counsel who "argued that the deterrent and retributive purposes of capital punishment would not be served" was not deficient for failing to present evidence that the defendant was a "model prisoner").

Dorsey resists this conclusion by arguing that the Supreme Court's decision in *Skipper v. South Carolina*, 476 U.S. 1 (1986), obligated his trial attorneys to investigate evidence of his adjustment to incarceration. But *Skipper* concerned only whether evidence of behavior while incarcerated is admissible in capital sentencing proceedings. *Skillicorn v. Luebbers*, 475 F.3d 965, 976 (8th Cir. 2007); *see also Skipper*, 476 U.S. at 4 ("[T]he only question before us is whether the exclusion from the sentencing hearing of the testimony petitioner proffered regarding his good behavior . . . in jail . . . deprived petitioner of his right to place before the sentencer relevant evidence in mitigation of punishment."). And "while *Skipper* held that such evidence is relevant and admissible," it does not follow that failing to investigate or present such evidence necessarily "make[s] counsel's performance deficient." *See Cole v. Roper*, 623 F.3d 1183, 1191 (8th Cir. 2010). For the contrary proposition, Dorsey cites *Williams v. Taylor*, where counsel failed to investigate *Skipper* evidence and the Supreme Court concluded that *Strickland*'s performance prong was met. *See* 529 U.S. 362, 396 (2000). But counsel's systematic failures in *Williams*

went far beyond failing to investigate *Skipper* evidence: counsel "did not begin to prepare . . . until a week before trial," completely failed to investigate the defendant's "nightmarish childhood," and "failed to introduce available evidence that [the defendant] was borderline mentally retarded." *Id.* at 395-96 (internal quotation marks omitted); *see also Andrus v. Texas*, 590 U.S. ---, 140 S. Ct. 1875, 1883 (2020) (per curiam) (concluding that *Strickland*'s performance prong was met where "counsel performed virtually no investigation" at all, not just no investigation into the defendant's adjustment to incarceration). *Williams* did not hold that the failure to investigate *Skipper* evidence is *per se* incompetent performance under *Strickland*.

Moreover, even assuming *arguendo* that reasonable jurists could believe that or find it debatable whether *Strickland*'s performance prong is met, no reasonable jurist could believe that or find it debatable whether *Strickland*'s prejudice prong is met. Missouri law authorizes the jury to impose a capital sentence for first-degree murder if the evidence in mitigation does not outweigh the evidence in aggravation. Mo. Rev. Stat. § 565.030(4)(3). Here, the jury found no fewer than seven statutory aggravating factors. No reasonable jurist could believe that or find it debatable whether there is a reasonable probability that evidence of Dorsey's adjustment to incarceration would have tipped the balance in favor of mitigation in the jury's view, *see Thomas v. Payne*, 960 F.3d 465, 475 (8th Cir. 2020) (holding that an ineffective-assistance claim fell short of *Martinez*'s substantiality requirement on the prejudice prong because there was "overwhelming evidence against [the petitioner] on . . . the aggravating factors supporting the death sentence")—especially given that the State did not rely on "evidence of jail misconduct as an aggravator," *see Jenkins*, 963 F.3d at 1273, and the evidence of Dorsey's adjustment to incarceration was not unequivocally positive anyway, *see Bucklew v. Luebbers*, 436 F.3d 1010, 1021 (8th Cir. 2006) (stating that "no prejudice resulted" in a capital case from defense counsel's failure to pursue a line of argument that would have had a "mixed impact"). True, even if the evidence in mitigation does not outweigh the evidence in aggravation, the jury retains the discretion to return a verdict of life imprisonment if it "decides under all of the circumstances not to assess and declare the punishment

at death." Mo. Rev. Stat. § 565.030(4)(4). But any weight that the jury might have placed on Dorsey's adjustment to incarceration "pales in comparison" to the horrific nature of Dorsey's conduct—raping his cousin, murdering her and her husband after they took him into their home to protect him, leaving their four-year-old daughter an orphan, and stealing their property to satisfy his drug debt. *See Clark v. Comm'r, Ala. Dep't of Corr.*, 988 F.3d 1326, 1334 (11th Cir. 2021). Although it is "conceivable" that evidence of Dorsey's adjustment to incarceration might have led the jury to exercise its discretion not to impose a capital sentence, no reasonable jurist could believe that or find it debatable whether it is more or almost more likely than not. *See Harrington*, 562 U.S. at 112.

In sum, no reasonable jurist could believe that or find it debatable whether either prong of Dorsey's ineffective-assistance claim is met. Therefore, the claim fails *Martinez*'s substantiality requirement, which means that Dorsey cannot show cause for his failure to raise the claim in state postconviction proceedings.[3] *See Martinez*, 566 U.S. at 14. Accordingly, the district court properly denied Dorsey's claim as procedurally defaulted. *See id.*

### III.

For the foregoing reasons, we affirm the denial of Dorsey's § 2254 petition.

_____

_____

[3]The affidavits that Dorsey argues the district court should have considered do not alter our analysis. At most, they tend to confirm that, overall, Dorsey was adjusting well to incarceration. As we have explained, Dorsey's claim is insubstantial even if the evidence showed that, overall, he was adjusting well to incarceration. Therefore, even assuming *arguendo* that the district court erred in refusing to consider the affidavits, *but see* 28 U.S.C. § 2246 (providing that evidence may be submitted "by affidavit" in *habeas corpus* proceedings only "in the discretion of the judge"); *Herrera v. Collins*, 506 U.S. 390, 417 (1993) (describing affidavits in *habeas corpus* proceedings as "particularly suspect" where, as here, they are largely hearsay and the petitioner "waited until the 11th hour" to submit them), the error was harmless, and we may disregard it, *see Boysiewick*, 179 F.3d at 622.