# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-1943
_____

Zachariah Marcyniuk

*Plaintiff - Appellant*

v.

Dexter Payne, Director, Arkansas Department of Correction[1]

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Pine Bluff

_____

Submitted: December 15, 2021
Filed: July 8, 2022

_____

Before LOKEN, SHEPHERD, and STRAS, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

---

[1]We note that Payne's official title is Director of the Arkansas Division of Correction. The Director of the Arkansas Division of Correction works under the direction of the Arkansas Board of Corrections and the Arkansas Department of Corrections Secretary. For the sake of continuity, however, we adopt the phrasing of the district court: Director, Arkansas Department of Correction.

After an Arkansas jury convicted him of capital murder and sentenced him to death, Zachariah Marcyniuk petitioned the district court[2] for a writ of habeas corpus in part on the basis that an off-the-record jury selection procedure violated his constitutional rights. Without holding an evidentiary hearing, the district court dismissed Marcyniuk's petition with prejudice. We granted a certificate of appealability as to whether the district court prematurely dismissed Marcyniuk's claims that the pretrial jury selection procedure violated his right to be present, right to a public trial, and right to an appeal and that his trial counsel was ineffective for participating in the procedure. Having jurisdiction under 28 U.S.C. §§ 1291 and 2253(a), we affirm.

I.

Marcyniuk began a romantic relationship with Katherine Wood in 2006, when they were both students at the University of Arkansas. After Wood ended the relationship in February 2008, Marcyniuk exhibited obsessive and harassing behavior towards Wood. In the early morning hours of March 9, 2008, Marcyniuk went to Wood's apartment in Fayetteville, Arkansas. After noticing that Wood was not home, Marcyniuk entered her apartment through a bedroom window. Though Marcyniuk testified that his intent was to return a cell phone that he had stolen from Wood, he did not have the cell phone with him when he entered Wood's apartment. Marcyniuk went through Wood's belongings and accessed her laptop four times looking for evidence that she had a new boyfriend before eventually falling asleep in a chair. When Wood returned home hours later, Marcyniuk met her at the front door, dragged her into her apartment, and stabbed her to death with a knife. At trial, Marcyniuk testified that "[w]e were just kind of wrestling and there was a knife" and that he remembered "getting up and there was blood everywhere." See Marcyniuk v. State (Marcyniuk II), 436 S.W.3d 122, 125 (Ark. 2014). After leaving Wood's apartment, Marcyniuk returned to his home, where he placed his bloody clothes and

---

[2]The Honorable James M. Moody, Jr., United States District Judge for the Eastern District of Arkansas.

the knife in a bag and picked up his dog before driving to his mother's house. Marcyniuk's parents thereafter contacted law enforcement "because they were concerned for [Wood] after [Marcyniuk] showed up . . . in a disheveled, frantic state asking [his mother] to take care of his dog and stating that he thought he had hurt [Wood]." Marcyniuk v. State (Marcyniuk I), 373 S.W.3d 243, 247 (Ark. 2010). Marcyniuk then drove west into Oklahoma, disposing of the knife somewhere along the way before being stopped and arrested by Oklahoma Highway Patrol.

Marcyniuk was charged in the Washington County Circuit Court with capital murder and residential burglary in connection with Wood's murder. Prior to Marcyniuk's trial, his trial counsel requested that the trial court use juror questionnaires. See Ark. R. Crim. P. 32.1. Thereafter, 100 potential jurors were sent a 29-page questionnaire consisting of 88 questions, including questions about the potential juror's education, experience with the judicial process and crime, exposure to pretrial publicity, beliefs about the death penalty, and views of the criminal justice system. A cover letter mailed out with each questionnaire informed potential jurors that the completed questionnaires would be destroyed after final resolution of the case. At least 90 potential jurors completed and returned the questionnaires. Forty-seven potential jurors reported in person for jury duty, and after voir dire was conducted in open court, a jury of 11 women and 1 man was seated. After a four-day trial, the jury convicted Marcyniuk of both charges and sentenced him to death on the capital murder charge. On direct appeal, after considering each of Marcyniuk's arguments and reviewing "the entire record . . . pursuant to Rule 4-3(i) of the Rules of the Arkansas Supreme Court, Ark.[ ]Code Ann. § 16-91-113(a), and Rule 10 of the Rules of Appellate Procedure—Criminal," the Arkansas Supreme Court found no reversible error and affirmed Marcyniuk's capital murder conviction[3] and death sentence. Marcyniuk I, 373 S.W.3d at 256. Marcyniuk then sought state post-conviction relief pursuant to Arkansas Rule of Criminal Procedure 37, which allows a person in custody to file a

---

[3]Marcyniuk did not challenge his residential burglary conviction before the Arkansas Supreme Court.

petition in the circuit court that imposed his or her sentence requesting that the sentence be vacated or corrected. See Ark. R. Crim. P. 37.1(a). Following a two-day hearing (the Rule 37 hearing), the Washington County Circuit Court denied Marcyniuk's petition, and the Arkansas Supreme Court affirmed. Marcyniuk II, 436 S.W.3d at 125.

While preparing to file a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on Marcyniuk's behalf, Marcyniuk's federal habeas counsel discovered through an investigator that, prior to trial—and without Marcyniuk's knowledge—Marcyniuk's trial counsel agreed to and participated in a pretrial jury selection procedure whereby both sides reviewed the potential juror questionnaires and each submitted a list of 15 potential jurors to strike from the venire. These 30 potential jurors were not called to appear in person for jury duty, and the strikes eliminating these potential jurors did not count as peremptory strikes for either side. The lists were kept in a 16-page juror information file (the juror information file) that was maintained separate from the trial record. Based upon this discovery, Marcyniuk's federal habeas petition alleged, *inter alia*, that the pretrial jury selection procedure resulted in violations of his right to be present, right to a public trial, and right to appellate review and that his trial counsel rendered ineffective assistance when he agreed to and failed to object to the pretrial jury selection procedure (collectively, the jury selection claims).

The district court denied Marcyniuk's request in his first motion for discovery to depose the prosecuting attorney, trial judge, and circuit clerk that handled Marcyniuk's trial, finding that granting Marcyniuk's request "would not resolve any factual disputes or assist the Court in deciding Marcyniuk's claims, or any issues related to procedural default." R. Doc. 24, at 3. However, the district court granted the portion of Marcyniuk's motion requesting that the district court expand the record to include the juror information file and declarations from Jamie Reynolds and Pam Penn, who were both employed by the Washington County Circuit Court Clerk's Office at the time of Marcyniuk's trial. Penn's declaration provided that the trial judge handled death penalty cases differently from his other cases and allowed

-4-

the prosecution and defense to strike a number of potential jurors prior to voir dire in those cases. In that same declaration, Penn further stated that "[t]he potential juror information maintained by the deputy clerk assigned to each judge is entirely different from the information filed in the circuit court's case file" and that the deputy clerks "each maintain [their] own records regarding the potential juror panel information used for a trial." R. Doc. 42-28, at 1.

The district court subsequently dismissed Marcyniuk's petition in its entirety and denied his "embedded request for a hearing," finding that he had procedurally defaulted his jury selection claims by failing to raise them on direct appeal to the Arkansas Supreme Court or during his state Rule 37 proceedings and had failed to demonstrate cause and prejudice as required to excuse his procedural default of these claims. Marcyniuk sought a certificate of appealability from the district court on the issues of, *inter alia*, whether the district court was required to hold an evidentiary hearing on his jury selection ineffective assistance of counsel claim and whether his constitutional rights were violated by the pretrial jury selection procedure. The district court denied Marcyniuk's motion, and he filed a motion for a certificate of appealability with this Court. We granted Marcyniuk a certificate of appealability "as to claims [1].A., [1].B., 1.C., and [1].D[.], as stated on pages 7-8 of Zachariah Marcyniuk's Application filed August 8, 2019." Marcyniuk's application states:

A certificate of appealability should issue as to:

1. Whether the following off-the-record jury selection claims were prematurely dismissed:

    A. Off-the-record jury selection violated Marcyniuk's right to be present.

    B. Off-the-record jury selection violated Marcyniuk's right to a public trial.

    C. Off-the-record jury selection violated Marcyniuk's right to an appeal.

-5-

> D. Counsel was ineffective for participating in off-the-record
> jury selection.

Appl. for Certificate of Appealability, at 10-11 (Aug. 12, 2019). The body of Marcyniuk's application clarifies that these are Claims 3.3.1., 3.3.2., 3.3.5., and 3.10.7., respectively, as asserted in his Petition for Writ of Habeas Corpus.[4]

## II.

Marcyniuk argues that the district court lacked an adequate basis for its conclusion that he failed to show cause and prejudice to excuse the procedural default of his jury selection claims, and he asks this Court to vacate this conclusion and reverse the district court's denial of his requests for discovery and an evidentiary hearing. "When reviewing the denial of a § 2254 habeas petition, 'we review the district court's findings of fact for clear error and its conclusions of law de novo.' We review a district court's finding of procedural default de novo." Harris v. Wallace, 984 F.3d 641, 647 (8th Cir. 2021) (citation omitted). We review the district court's decision to deny Marcyniuk's requests for discovery and an evidentiary hearing for an abuse of discretion. See Toney v. Gammon, 79 F.3d 693, 700 (8th Cir. 1996); Osborne v. Purkett, 411 F.3d 911, 915 (8th Cir. 2005).

A federal court may entertain a petitioning state prisoner's application for a writ of habeas corpus if it concludes "that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "If a petitioner has not presented his habeas corpus claim to the state court, the claim is generally defaulted." Anderson v. Kelley, 938 F.3d 949, 954 (8th Cir. 2019). "Out of respect for finality, comity, and the orderly administration of justice, a federal

---

[4]We note that Marcyniuk couches his jury selection ineffective assistance of counsel claim (Claim 3.10.7.) in terms of his trial counsel's "participation" in the pretrial jury selection process, but before the district court, he couched this claim in terms of his trial counsel's "agreement to and failure to object to" the pretrial jury selection process.

court will not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus absent a showing of cause and prejudice to excuse the default." Cagle v. Norris, 474 F.3d 1090, 1099 (8th Cir. 2007) (quoting Dretke v. Haley, 541 U.S. 386, 388 (2004)); see also Coleman v. Thompson, 501 U.S. 722, 750 (1991) (holding in relevant part that federal habeas review of a procedurally defaulted claim is barred "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law"). "If a prisoner fails to demonstrate cause, the court need not address prejudice." Cagle, 474 F.3d at 1099.

"'[C]ause' under the cause and prejudice test must be something *external* to the petitioner, something that cannot fairly be attributed to him . . . ." Coleman, 501 U.S. at 753. As noted by the Supreme Court,

> "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." For example, "a showing that the factual or legal basis for a claim was not reasonably available to counsel, . . . or that 'some interference by officials' . . . made compliance impracticable, would constitute cause under this standard."

Id. (alterations in original) (citations omitted). In Coleman, the Supreme Court clearly stated that "[a]ttorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.'" Id. (citation omitted). In Martinez v. Ryan, however, the Supreme Court created a narrow exception to this rule, providing that "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." 566 U.S. 1, 17 (2012). Subsequently, in Trevino v. Thaler, the Supreme Court expanded this exception, holding that Martinez applies "where . . . state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a

-7-

meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal." 569 U.S. 413, 429 (2013).

The parties do not dispute that because Marcyniuk failed to raise his jury selection claims on direct appeal or during his Rule 37 hearing, these claims are procedurally defaulted. See Anderson, 938 F.3d at 954; see also Ruiz v. Norris, 71 F.3d 1404, 1409 (8th Cir. 1995) (finding claim that defendant failed to raise on direct appeal to the Arkansas Supreme Court or during state post-conviction proceedings was procedurally defaulted). The parties diverge as to whether the district court correctly determined that Marcyniuk failed to demonstrate cause to excuse the procedural default of these claims. Marcyniuk argues that he demonstrated cause to excuse the procedural default of each of his jury selection claims by showing that state officials interfered with his ability to comply with the procedural rule and the factual basis of his claims was not reasonably available to his state post-conviction counsel and, additionally, that he demonstrated cause to excuse the procedural default of his ineffective assistance of trial counsel claim under Martinez. Marcyniuk further contends that, without a hearing, the district court lacked an adequate basis for its ruling that cause had not been shown. He asserts that the district court should have ordered discovery and a hearing on cause because the extent of state officials' interference and state post-conviction counsel's efforts to investigate the pretrial jury selection procedure is not known. We disagree. For the reasons that follow, we hold that the district court correctly determined that Marcyniuk did not demonstrate cause to excuse the procedural default of his claims, and it did not abuse its discretion in denying his request for discovery and an evidentiary hearing on cause and prejudice.

A.

We first address Marcyniuk's argument that he demonstrated cause to excuse the procedural default of his jury selection ineffective assistance of counsel claim under Martinez. A petitioner claiming, as Marcyniuk does here, ineffective

assistance of state post-conviction counsel as cause must demonstrate the following in order to excuse procedural default:

> (1) the claim of ineffective assistance of trial counsel was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; and (3) the state collateral review proceeding was the "initial" review proceeding with respect to the "ineffective-assistance-of-trial-counsel claim."

Harris, 984 F.3d at 648 (citation omitted).

Beginning with the first requirement, this Court recently explained that "[a] 'substantial claim' is one with 'some merit,'" and "Martinez's some-merit requirement 'means that whether [the claimant's] trial counsel was ineffective . . . must at least be debatable among jurists of reason.'" Dorsey v. Vandergriff, 30 F.4th 752, 756 (8th Cir. 2022) (second and third alterations in original) (citations omitted). Thus, to demonstrate that his ineffective assistance of trial counsel claim is "substantial," Marcyniuk must show that it is at least debatable among jurists of reason whether his trial counsel's performance was deficient and whether this deficient performance prejudiced him. See id. at 757; Strickland v. Washington, 466 U.S. 668, 687 (1984). "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Strickland, 466 U.S. at 697. Because Marcyniuk fails to show that his trial counsel's alleged deficient performance prejudiced him, we need not address whether his trial counsel's performance was, in fact, deficient. See id.

Marcyniuk argues that to demonstrate prejudice, he need only show that his trial counsel's participation in the pretrial jury selection procedure rendered his trial "fundamentally unfair." Marcyniuk bases his argument on Weaver v. Massachusetts, where the Supreme Court considered the necessary showing to demonstrate prejudice when a defendant alleges a violation of the right to a public

trial in the context of an ineffective-assistance-of-counsel claim. 137 S. Ct. 1899, 1910 (2017). There, the Supreme Court assumed without deciding that, "even if there is no showing of a reasonable probability of a different outcome," as is typically required to demonstrate Strickland prejudice, "relief must still be granted if the convicted person shows that attorney errors rendered the trial fundamentally unfair." Id. at 1911. We make the same assumption but nonetheless determine that Marcyniuk has not shown that "fundamental unfairness" resulted from his trial counsel's participation in the pretrial jury selection procedure.

Marcyniuk alleges that his trial was fundamentally unfair because he was unaware of the pretrial jury selection procedure and any discriminatory strikes made during this procedure. However, Marcyniuk's trial counsel agreed to and participated in the procedure, which effectively gave both parties an additional 15 peremptory strikes; a record was, in fact, made of these strikes, and maintained by and available for review at the Washington County Circuit Court Clerk's Office; the written submission of strikes that occurred as part of the pretrial jury selection procedure was only a portion of voir dire[5]; and the remainder of voir dire, along with the evidentiary and sentencing phases of the trial, remained open to the public. Further, Marcyniuk has not shown that any potential harm flowing from the closure came to pass; his suggestion that the prosecution and defense engaged in gender-based, discriminatory strikes is speculative, and he makes no argument that he was prejudiced by his own trial counsel's alleged gender-based strikes. Cf. United States v. Lee, 715 F.3d 215, 222 (8th Cir. 2013) (explaining that ineffective assistance of counsel claim based on trial counsel's racially motivated jury selection strategy could not succeed absent showing of prejudice).

Under these circumstances, we conclude that the alleged public-trial, right to be present, and right to appellate review violations resulting from Marcyniuk's trial counsel's participation in the pretrial jury selection procedure did not render his trial

---

[5]The Arkansas Supreme Court "has observed that the concept of an expanded questionnaire is merely a written form of voir dire examination." Miller v. State, 362 S.W.3d 264, 274 (Ark. 2010).

fundamentally unfair. See, e.g., Weaver, 127 S. Ct. at 1913 (finding exclusion of petitioner's mother and her minister from courtroom during jury selection did not "pervade the whole trial or lead to basic unfairness" where petitioner's trial was not conducted in secret, closure was limited to voir dire, courtroom remained open during evidentiary phase of trial, and record of the proceedings "[did] not indicate any basis for concern, other than the closure itself"); Williams v. Burt, 949 F.3d 966, 978 (6th Cir. 2020) (determining petitioner could not demonstrate fundamental unfairness where "[t]he vast majority of his trial took place in an open setting, transcripts were made available from the limited sessions that took place behind closed doors, and the closure had no discernable effect on the judge, counsel, or jury"); United States v. Aguiar, 894 F.3d 351, 356-57 (D.C. Cir. 2018) (concluding exclusion of petitioner's family members from voir dire was not fundamentally unfair where "[t]he closed proceedings were held on the record, in the presence of all parties and their counsel"; "[t]he evidentiary and sentencing phases of the trial were held in open court, as were peremptory strikes and the district court's final rulings on pretrial motions"; and district court used breaks during voir dire "to reference issues for final resolution later in open court").

Having determined that Marcyniuk's trial counsel's participation in the pretrial jury selection procedure did not render his trial fundamentally unfair, we turn to Marcyniuk's alternative argument that he nonetheless meets Strickland's prejudice requirement because he was prejudiced by his trial counsel's participation in and failure to preserve a record of the pretrial jury selection procedure. Marcyniuk asserts that, absent his trial counsel's alleged errors, his case would have been reversed on appeal or he would have been granted post-conviction relief because the Arkansas Supreme Court has long recognized the right to open, public trials, including voir dire, and treats violations of the right to a public trial as fundamental errors that require no showing of prejudice. Marcyniuk did not raise this argument to the district court as part of the ineffective assistance claim on which this Court

granted him a certificate of appealability.[6]  Rather, before the district court, Marcyniuk focused on the outcome of his trial, arguing that his trial counsel's agreement to and failure to object to, i.e., participation in, the pretrial jury selection procedure prejudiced him "because his jury, because of its composition and the method of selection[,] was predisposed to find him guilty and sentence him to death," see R. Doc. 1, at 70, an argument he does not reassert before this Court. Therefore, we decline to consider this new argument for the first time on appeal or disturb the district court's conclusion that Marcyniuk was not prejudiced by his trial counsel's alleged errors.  See Mellott v. Purkett, 63 F.3d 781, 784 (8th Cir. 1995); Etheridge v. United States, 241 F.3d 619, 622 (8th Cir. 2001).

Ultimately, we agree with the district court that Marcyniuk has failed to show that his trial counsel's agreement to and failure to object to the pretrial jury selection procedure prejudiced him or rendered his trial fundamentally unfair, and we conclude that the matter is not "debatable among jurists of reason."  See Dorsey, 30 F.4th at 756 (citation omitted).  Therefore, because Marcyniuk has not demonstrated that his ineffective assistance of trial counsel claim is substantial, we affirm the district court's finding that his procedural default of this claim is not excused under Martinez.

We further affirm the district court's denial of Marcyniuk's requests for discovery and "embedded request for a hearing" to prove that cause and prejudice exist to excuse the procedural default of his ineffective assistance of trial counsel claim.  In a case decided during the pendency of this matter before this Court, the Supreme Court held "that, under [28 U.S.C.] § 2254(e)(2), a federal habeas court may not conduct an evidentiary hearing or otherwise consider evidence beyond the state-court record based on ineffective assistance of state postconviction counsel."

---

[6]Marcyniuk did make this argument to the district court in relation to Claim 3.10.6., see R. Doc. 1, at 69, but Marcyniuk applied for, and this Court granted, a certificate of appealability as to Claim 3.10.7., specifically, not Claim 3.10.6., see Appl. for Certificate of Appealability, at 10-11, 14, 28-32.

Shinn v. Ramirez, No. 20-1009, slip op. at 13, 2022 WL 1611786 (U.S. May 23, 2022). Instead, "a federal court may order an evidentiary hearing or otherwise expand the state-court record only if the prisoner can satisfy § 2254(e)(2)'s stringent requirements."[7] Id., slip op. at 15. Shinn explicitly rejects the idea that "because § 2254(e)(2) bars only 'an evidentiary hearing on the claim,' a federal court may hold an evidentiary hearing to determine whether there is cause and prejudice," finding that because "holding a Martinez hearing when the prisoner cannot 'satisfy [the Antiterrorism and Effective Death Penalty Act's] demanding standards' in § 2254(e)(2) would 'prolong federal habeas proceedings with no purpose[,] . . . a Martinez hearing is improper if the newly developed evidence never would 'entitle [the prisoner] to federal habeas relief.'" Id., slip op. at 19-21 (third alteration in original) (citations omitted).

Marcyniuk makes no argument that he can satisfy the narrow requirements of § 2254(e)(2), instead arguing that the provision does not apply to him because state officials concealed the factual basis of his claims from his state appellate and post-conviction attorneys and the trial record contained no indication that the pretrial jury selection procedure took place. Marcyniuk relies on Williams v. Taylor, which provides that the question posed by the opening clause of § 2254(e)(2) "is not whether the facts could have been discovered but instead whether the prisoner was diligent in his efforts." 529 U.S. 420, 435 (2000). Diligence in this context "depends

---

[7]Section 2254(e)(2) provides:

If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—(A) the claim relies on—(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue the claims in state court; it does not depend . . . upon whether those efforts could have been successful." Id. In Williams, the Supreme Court held that the prisoner and his state habeas counsel had not exercised the required diligence to preserve his Brady[8] claim where the undisclosed psychiatric report in question was discovered in the prisoner's state court file and there were repeated references to such report in the transcript of the prisoner's sentencing proceeding, which put his "state habeas counsel on notice of the report's existence and possible materiality." Id. at 437-40. However, the Supreme Court also found that the prisoner and his state habeas counsel *were* diligent in their efforts to develop facts supporting his juror bias and prosecutorial misconduct claims where the trial record contained no evidence that one of the jurors deliberately omitted the fact of her previous marriage to one of the prosecution's witnesses during voir dire and "[s]tate habeas counsel did attempt to investigate petitioner's jury." Id. at 440-43.

We find that this case is more akin to the former factual scenario and, therefore, Marcyniuk and his state post-conviction counsel did not exercise the diligence required to preserve his ineffective assistance of trial counsel claim. First, for the reasons discussed infra Section II.B., we disagree with Marcyniuk that state officials concealed the factual basis of his claims from his state appellate and post-conviction attorneys. Second, to the extent Marcyniuk argues that no amount of diligence would have led to the discovery of the juror information file, we disagree. Not only was the juror information file stored at the Washington County Circuit Court Clerk's Office in accordance with typical practice and available for review by attorneys, see R. Doc. 42-28, the practice of excusing potential jurors prior to trial based upon their answers to an expanded juror questionnaire was considered by the Arkansas Supreme Court in a death penalty case decided in January 2010, the same year that Marcyniuk filed his petition for state post-conviction relief, see

---

[8]Brady v. Maryland, 373 U.S. 83 (1963).

Miller, 362 S.W.3d at 273-74 (concluding that no requirement "that all jurors be brought in for voir dire and not be excluded based on . . . their beliefs about the death penalty . . . . exists under either state or federal law"). Thus, even if, as Marcyniuk alleges, there was no mention of the pretrial jury selection procedure in the record, we conclude that the multiple references in the record to the expanded questionnaire used in this case, combined with the Arkansas Supreme Court's discussion of a similar procedure in Miller, were sufficient to lead Marcyniuk's post-conviction counsel to conduct at least a cursory review of the juror information file, especially considering that Marcyniuk brought claims related to the questionnaires and voir dire in his Rule 37 petition. Therefore, because Marcyniuk fails to demonstrate either that the requirements of § 2254(e)(2) do not apply to him or that he can satisfy those requirements, we conclude that he is not entitled to discovery and an evidentiary hearing on his ineffective assistance of trial counsel claim and affirm the district court's denial of the same. See Adam and Eve Jonesboro, LLC v. Perrin, 933 F.3d 951, 958 (8th Cir. 2019) ("[W]e may affirm a judgment on any ground supported by the record."); Cross-Bey v. Gammon, 322 F.3d 1012, 1014 (8th Cir. 2003) ("[W]hen the [Supreme] Court interprets a federal statute and applies that rule of federal law to the parties before it, that interpretation 'must be given full retroactive effect[.]'" (quoting Harper v. Va. Dep't of Tax'n, 509 U.S. 86, 97 (1993)).

B.

Marcyniuk further argues that he demonstrated cause to excuse the procedural default of his right to be present, right to a public trial, right to appellate review, and ineffective assistance of trial counsel claims because state officials interfered with his ability to comply with the procedural rule and the factual basis of his claims was not reasonably available to his state post-conviction counsel.

Beginning with Marcyniuk's state interference argument, he contends that the court reporter and circuit clerk hindered his compliance with the procedural rule by omitting the juror information file from the record transmitted to the Arkansas

-15-

Supreme Court, which the court reporter certified as "true and correct" and the deputy circuit clerk certified as "true and complete."[9] Rule 10(a) of the Arkansas Rules of Appellate Procedure–Criminal provided at the time:

> Upon imposing a sentence of death, the circuit court shall order the circuit clerk to file a notice of appeal on behalf of the defendant within thirty (30) days after entry of judgment. . . . The court reporter shall transcribe all portions of the criminal proceedings consistent with Article III of the Rules of the Supreme Court and shall file the transcript with the circuit clerk within ninety (90) days after entry of the judgment. Within thirty (30) days after receipt of the transcript, the circuit clerk shall compile the record consistent with Article III and shall file the record with the clerk of the Arkansas Supreme Court for mandatory review consistent with this rule and for review of any additional issues the appellant may enumerate.

Ark. R. App. P.–Crim. 10(a) (2009). We conclude that the court reporter's certification, which merely provided that "the foregoing pages numbered 236 through 1462 constitute a true and correct transcript of the proceedings," was not a warranty as to the completeness of the entire record. We have reviewed the state court record, and these pages contain only the transcripts and exhibits from the pretrial motion hearings and the trial transcript and exhibits. Thus, we conclude that the court reporter's certification was not a false statement and the court reporter did not hinder his compliance with the procedural rule.

---

[9]Marcyniuk also alleges in a mere two sentences that the state court judge, who "initiated" the pretrial jury selection procedure, and another deputy circuit clerk, who "sequestered" the juror information file from the record, interfered with his compliance with the procedural rule. However, Marcyniuk does not provide any further explanation or citation to relevant authority that would demonstrate how these officials interfered with his compliance with the procedural rule, and therefore, we need not address this argument. See Cox v. Mortg. Elec. Registration Sys., 685 F.3d 663, 674 (8th Cir. 2012) (finding that appellants "waived [an] issue by failing to provide a meaningful explanation of the argument and citation to relevant authority in their opening brief").

Further, we conclude that the deputy circuit clerk did not make a false statement when she certified the record as "true and complete." At that time, Arkansas Supreme Court Rule 3-4(b) provided that "[t]he record shall not include the impaneling or swearing of the jury, the names of the jurors, or any motion, affidavit, order, or ruling in reference thereto unless expressly called for by a party's designation of the record." Ark. Sup. Ct. R. 3-4(b) (2009); see also Jefferson v. State, 276 S.W.3d 214, 231 (Ark. 2008) (same). Marcyniuk's notice of appeal, which was prepared by the circuit clerk in accordance with Rule 10(a), designated "the entire record" but did not expressly call for the jury-selection records to be included, nor did Marcyniuk make any other request for these records to be included in the record. See McKee v. State, 608 S.W.3d 584, 596 (Ark. 2020) (finding designation of "the entire record" in notice of appeal did not extend to transcription of jury-selection proceedings). Because it was not required that the juror information file be included in the record transmitted to the Arkansas Supreme Court, the deputy circuit clerk did not interfere by stating that the record was "true and complete." Therefore, we agree with the district court that there was no interference by state officials that prevented Marcyniuk's state appellate and post-conviction lawyers from raising his claims.

Marcyniuk alternatively argues that the factual basis for his jury selection claims was not reasonably available to his state post-conviction counsel. We disagree. The juror information file was available at the Washington County Circuit Court Clerk's Office and Marcyniuk's federal habeas counsel learned of the pretrial jury selection procedure after an investigator with the Federal Public Defender's Office spoke with Penn, who described the procedure and gave the investigator a copy of the juror information file. We agree with the district court that the factual basis of Marcyniuk's claims was "reasonably available" to his state court lawyers. The juror information file in this case is not akin to the information discovered in Amadeo v. Zant, 486 U.S. 214, 224 (1988), where "a sweeping investigation of 20 to 30 years' worth of jury lists" turned up a handwritten memorandum revealing a scheme to underrepresent black people and women on grand and traverse juries, or in Ambrose v. Booker, 684 F.3d 638, 645 (6th Cir. 2012), where a "broad statistical

-17-

analysis" uncovered a computer glitch that was "buried in a mountain of computer code" and caused the systematic underrepresentation of black people in a county's jury pools. Here, the juror information file was maintained by the Washington County Circuit Court Clerk's Office and available for attorneys to review. The declaration of Penn, who at the time had been employed by the Washington County Circuit Court Clerk's Office for nearly ten years, reveals that deputy circuit clerks maintain juror information files separate from case files—a practice that seems consonant with Rule 3-4, which does not require that juror information be included in the record transmitted to the appellate court unless expressly called for in the notice of appeal. See Ark. Sup. Ct. R. 3-4(b) (2009). Thus, it appears that the manner in which the juror information file was stored—that is, separate from the case file—was not unusual, and therefore, the factual basis for Marcyniuk's claims was "reasonably available" to his state court lawyers. Cf. Zeitvogel v. Delo, 84 F.3d 276, 280 (8th Cir. 1996) ("When a petitioner can obtain the information contained in unproduced documents through a reasonable and diligent investigation, the State's failure to produce documents is not cause.").

Because Marcyniuk fails to show either that interference by state officials made compliance with the procedural rule impracticable or that the factual or legal basis for his claims was not reasonably available to his state appellate and post-conviction counsel, we conclude that the district court did not err in finding that he had not demonstrated cause to excuse the procedural default of his claims. We further affirm the district court's denial of discovery and an evidentiary hearing on cause and prejudice. Marcyniuk argues that an evidentiary hearing is necessary because the extent of state court officials' interference and his state post-conviction counsel's efforts to investigate the pretrial jury selection procedure and collect records is not known. Marcyniuk's latter argument is irrelevant to the determination of whether the factual basis of his claims was reasonably available to his post-conviction counsel. As to his former argument, we have already determined that Marcyniuk has failed to show that state officials interfered with his ability to comply with the procedural rule, and we decline to remand this matter to the district court on the basis of the vague and unsupported assertion that there may have been

some further, undiscovered interference by state officials that would excuse the procedural default of his claims. Cf. Schriro v. Landrigan, 550 U.S. 465, 475 (2007) ("If district courts were required to allow federal habeas applicants to develop even the most insubstantial factual allegations in evidentiary hearings, district courts would be forced to reopen factual disputes that were conclusively resolved in the state courts.").[10]

## III.

Based upon the foregoing, we affirm.

_____

---

[10]We need not comment on the extent to which Shinn reaches requests for evidentiary hearings on cause and prejudice where the basis of the petitioner's cause argument is not ineffective assistance of post-conviction counsel. Still, we note that, though our precedent is clear that "the strict rules regarding the availability of federal evidentiary hearings on the merits of habeas cases do not preclude our court from ordering evidentiary hearings on the limited issues of cause or prejudice," Wooten v. Norris, 578 F.3d 767, 780 (8th Cir. 2009), the Supreme Court, in Shinn, expressed doubt about, but declined to address, the petitioners' argument to the same effect. See Shinn, slip op. at 19-20.