# United States Court of Appeals
## For the Eighth Circuit

_____

No. 25-2617
_____

Briley Piper

*Plaintiff - Appellant*

v.

Attorney General for the State of South Dakota; Joseph Roemmich, Warden, South Dakota State Penitentiary

*Defendants - Appellees*

United States of America

*Intervenor*

_____

Appeal from United States District Court
for the District of South Dakota - Western

_____

Submitted: March 18, 2026
Filed: May 4, 2026

_____

Before SHEPHERD, ERICKSON, and GRASZ, Circuit Judges.

_____

ERICKSON, Circuit Judge.

In March 2000, Briley Piper, and two others, brutally beat and killed Chester Allan Poage at a remote location in Lawrence County, South Dakota. In January

2001, shortly before his capital murder trial was scheduled to begin, Piper pled guilty to five crimes, including first-degree felony murder. The circuit court subsequently imposed a death sentence.[1] Several years later, when reviewing Piper's application for habeas relief, the South Dakota Supreme Court concluded Piper did not validly waive his right to have a jury determine his sentence, vacated Piper's death sentence, and remanded for resentencing by a jury.[2] On remand, the jury found the State had proven three aggravating statutory factors[3] beyond a reasonable doubt and unanimously recommended a sentence of death. The South Dakota Supreme Court affirmed Piper's sentence. State v. Piper, 842 N.W.2d 338, 345-47 (S.D. 2014) (Piper III). Piper filed a second application for a writ of habeas corpus, claiming, among other issues, that his guilty pleas were not voluntary and intelligent. The South Dakota Supreme Court affirmed the circuit court's decision denying habeas relief. Piper v. Young, 936 N.W.2d 793, 816 (S.D. 2019) (Piper IV).

Piper commenced this federal habeas corpus case, seeking to overturn both his capital murder conviction and death sentence. The district court[4] denied all

---

[1]After three days of evidence, the state circuit court sentenced Piper to death for first-degree murder, life imprisonment for kidnapping, and consecutive maximum sentences for robbery, burglary, and grand theft. Piper's sentence was affirmed on direct appeal. State v. Piper, 709 N.W.2d 783, 797-99 (S.D. 2006) (Piper I).

[2]Piper v. Weber, 771 N.W.2d 352, 360 (S.D. 2009) (Piper II).

[3]The jury found the existence of the same three aggravating factors that the state circuit court had previously found. Piper III, 842 N.W.2d at 345-47. Those factors were: (1) committing the offense for personal benefit or to receive money or other thing of monetary value; (2) committing the offense for the purpose of "avoiding, interfering with, or preventing a lawful arrest;" and (3) committing an "outrageously or wantonly vile, horrible, or inhuman" offense that involves "torture, depravity of mind, or an aggravated battery to the victim." See S.D. Codified Laws § 23A-27A-1(3), (6), & (9).

[4]The Honorable Roberto A. Lange, Chief Judge, United States District Court for the District of South Dakota.

thirteen claims and granted a certificate of appealability on four claims. This Court granted Piper's unopposed request to expand the certificate of appealability to include two more claims. Because Piper has failed to show that he is entitled to relief on any of the six claims before us, we affirm.

## I. BACKGROUND

Briley Piper has been on death row in South Dakota for 20 years. The precise details of the murder of Poage that lead to his death sentence are mostly immaterial to the issues before us. A complete factual summation of the extended and brutal nature of the murder can be found in Piper I, 709 N.W.2d at 790-91. A month after Piper left Poage to die and drove away in Poage's car, a woman discovered Poage's remains, clad in a sleeveless t-shirt, socks, and shoes, in a creek. Id. An autopsy revealed numerous head injuries and stab wounds. Id. at 792. The cause of Poage's death was determined to be stab wounds and blunt force injury to the head. Id. A complete procedural progression of this case through its successive stages of litigation in state court was articulated by the court in Piper IV, 936 N.W.2d at 793. In short, Piper's case has been before the South Dakota Supreme Court four times— twice on direct appeal and twice on habeas review.

Having exhausted his avenues for relief in state court, Piper filed this federal habeas case. The district court resolved Piper's claims in two separate orders. The first order addressed issues relating to exhaustion and procedural default and disposed of several claims. The second order granted summary judgment in favor of the State on the remaining claims and dismissed Piper's habeas petition. Of the thirteen claims Piper alleged in the district court, six are before us on review:

1. The constitutionality of 28 U.S.C. § 2254(d) after the Supreme Court's decision in Loper Bright Enterprises v. Raimondo, 603 U.S. 369 (2024);

2. South Dakota's *res judicata* doctrine as applied to Piper's challenge to his guilty pleas;

3. The district court's denial of Piper's request for an evidentiary hearing to show Piper was not "at fault" for resentencing trial counsel's failure to investigate/present mitigating evidence on fetal alcohol spectrum disorder and state habeas counsel's failure to raise the issue;

4. The adequacy of trial counsel's impeachment of witness Thomas Curtis;

5. Trial counsel's purported failure to investigate and rebut the State's assertion that Sister Gabriella Crowley violated prison rules during her interactions with Piper; and

6. The district court's denial of relief due to cumulative prejudice.

After careful review, we conclude Piper has not demonstrated he is entitled to relief on any of his claims.

## II. DISCUSSION

When reviewing the denial of a habeas petition, we review the district court's findings of fact for clear error and its conclusions of law *de novo*. Garrett v. Payne, 154 F.4th 599, 601 (8th Cir. 2025). We review *de novo* a district court's finding of procedural default. Marcyniuk v. Payne, 39 F.4th 988, 995 (8th Cir. 2022). Our review of the denial of an evidentiary hearing is under the deferential abuse of discretion standard. Id.

To prevail in a federal habeas proceeding, a petitioner must show a constitutional error that had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 622 (1983) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)). A federal court's authority to grant a writ of habeas corpus on state convictions is narrow. See 28 U.S.C. § 2254(d). It is not enough for a federal court to conclude that, in its independent judgment, it would have applied federal law differently from the state court; "the state court's application must have been objectively unreasonable."

Strong v. Roper, 737 F.3d 506, 510 (8th Cir. 2013) (quoting Rousan v. Roper, 436 F.3d 951, 956 (8th Cir. 2006)).

1. **The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and the Supreme Court's decision in Loper Bright Enterprises v. Raimondo, 603 U.S. 369 (2024).**

Although not the first issue raised by Piper, we begin with his challenge to the constitutionality of the deference federal courts are required to give state court rulings. Section 2254(d) of AEDPA requires a state prisoner to show the state court's adjudication of a claim either:

> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Piper argues the Supreme Court's decision in Loper Bright renders this provision in AEDPA unconstitutional. He contends federal courts are obligated to exercise independent judgment when deciding whether a petitioner is entitled to habeas corpus relief. Every court to address this claim disagrees with this view and has concluded Loper Bright has limited applicability and does not implicate federal habeas practice. See, e.g., Sanders v. Plappert, 168 F.4th 837, 848-49 (6th Cir. 2026); Bates v. Sec'y, Fla. Dep't of Corrs., No. 25-12588, 2025 WL 2305211, at *1 (11th Cir. Aug. 1, 2025) (per curiam) (unpublished), cert. denied, Bates v. Dixon, 146 S. Ct. 65 (2025); Ellis v. Jeffreys, 8:23CV315, 2026 WL 123276, at *10 n.8 (D. Neb. Jan. 9, 2026) (unpublished); Gay v. Payne, Civil No. 6:23-cv-06011, 2025 WL 2737222, *3 (W.D. Ark. Sept. 25, 2025) (unpublished); Green v. Streeter, Case No. 5:24-cv-1501-MHH-GMB, 2025 WL 3721690, at *1 (N.D. Ala. Sept. 23, 2025)

(unpublished); Walden v. Thornell, 799 F. Supp. 3d 920, 925-27 (D. Ariz. 2025); Davis v. Guerrero, 798 F. Supp. 3d 633, 667-68 (N.D. Tex. 2025); Creech v. Valley, Case No. 1:24-cv-00485-GMS, 2025 WL 3718636, at *15-16 (D. Idaho Aug. 5, 2025) (unpublished).

Piper has offered no convincing basis on which to decree AEDPA deference unconstitutional or find that Loper Bright silently overruled other Supreme Court cases interpreting and applying § 2254(d)(1). Notably, seven months after Loper Bright was decided, the Supreme Court reiterated a state prisoner's narrow grounds for habeas relief in federal court, as set forth in § 2254(d). See Andrew v. White, 604 U.S. 86, 92 (2025) (per curiam). We join the other courts that have concluded Loper Bright did not render AEDPA deference unconstitutional.

When reviewing a state prisoner's federal habeas petition, "[a] state court's findings are entitled to a presumption of correctness, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence." Strong, 737 F.3d at 510 (citing 28 U.S.C. § 2254(e)(1)).

## 2. South Dakota's application of *res judicata* to Piper's due process challenge to his 2001 guilty pleas.

In his first appeal and in his first habeas application, Piper did not challenge the validity of his guilty pleas. The record shows that given the overwhelming evidence of guilt, the reprehensible conduct involved in the murder, and undisclosed aggravating evidence unknown to law enforcement or the prosecution, Piper's objective was not to undo his convictions but seek reversal of the death sentence and conversion to life in prison without the possibility of parole. While the South Dakota Supreme Court vacated Piper's death sentence, it did not give him the full relief he was seeking. Rather than convert his sentence to life without parole, the South Dakota Supreme Court remanded Piper's case for resentencing by a jury, where Piper again faced the prospect of being sentenced to death.

Only after failing to obtain the full relief he wanted did Piper move for the first time to withdraw his guilty pleas. The circuit court, finding no manifest injustice, denied Piper's motion on the merits. See S.D. Codified Laws § 23A-27-11 (permitting a court to allow a defendant to withdraw his plea "to correct manifest injustice"). On appeal, the South Dakota Supreme Court concluded the circuit court lacked jurisdiction to consider the motion because its remand order only authorized the circuit court to conduct a jury resentencing. Piper III, 842 N.W. at 344.

While his second habeas application was pending in the state circuit court, Piper moved a second time to withdraw his guilty pleas. The state circuit court denied his motion for lack of jurisdiction. In his second habeas application, Piper claimed he waived his right to a jury trial and pled guilty believing this was the only way to be sentenced by the court. Piper did not ask for a jury to determine his guilt, nor did he claim actual innocence. He contended that once his death sentence was vacated by the South Dakota Supreme Court, he became an "unsentenced" defendant and, under S.D. Codified Law § 23A-27-11, he was entitled as a matter of right to withdraw his guilty pleas. Piper asserted that the court's refusal to allow him to withdraw his guilty pleas was unexpected. The state circuit court denied relief, noting the claim might be barred under principles of claim preclusion but also concluding Piper's guilty pleas were voluntarily and intelligently made.

On appeal, in Piper IV, the South Dakota Supreme Court determined that Piper's claim was "twice procedurally defaulted" because he failed to raise it on direct appeal and failed to raise it during his initial habeas case. 936 N.W.2d at 805. The Court explained, "Piper's opportunity to challenge his guilty pleas was surely presented in Piper II, and if he intended to pursue it at all, he should have advanced the argument then rather than through the piecemeal method he now suggests." Id. at 806. The Court expressly rejected Piper's theory that S.D. Codified Law § 23A-27-11 allows him to choose when to mount a challenge to his guilty pleas, reasoning nothing in the statutory text displaces other restricting limitations, such as basic rules of claim preclusion or procedural default in post-conviction cases. Id.

Turning to Piper's federal habeas petition where he raises this claim again, "a federal court will not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus absent a showing of cause and prejudice to excuse the default." Marcyniuk, 39 F.4th at 995 (quoting Cagle v. Norris 474 F.3d 1090, 1099 (8th Cir. 2007)). Piper argued to the district court that federal review is available because the state court applied *res judicata* to his claim in a novel and unforeseeable way. The district court rejected Piper's argument, finding the South Dakota Supreme Court consistently applies *res judicata* to bar habeas claims that were or could have been raised on direct appeal. Because the claim was defaulted, the district court declined to address the merits of Piper's claim.

This Court has previously determined that South Dakota's *res judicata* rule "is an independent and adequate state ground that bars federal habeas relief." Rhines v. Young, 899 F.3d 482, 490-91 (8th Cir. 2018). Further, longstanding South Dakota habeas precedent has applied *res judicata* to bar claims that could have been raised on direct appeal. See Ramos v. Weber, 616 N.W.2d 88, 91-92 (S.D. 2000) (noting in a habeas proceeding *res judicata* precludes consideration of a constitutional issue that could have been raised in an earlier proceeding); Moeller v. Weber, 689 N.W.2d 1, 6 (S.D. 2004) ("Habeas corpus petitions are subject to the doctrines of *res judicata* and collateral estoppel."); Loop v. Class, 554 N.W.2d 189, 193 (S.D. 1996) (reiterating the rule that when a defendant takes a direct appeal, "he cannot thereafter, in a post-conviction proceeding, raise any matter of which he was aware at the time of the direct appeal but did not raise"). Piper has not shown the district court erred when it held South Dakota's application of *res judicata* in habeas proceedings was firmly established when Piper contested his court-imposed death sentence. Piper procedurally defaulted his due process claim related to his guilty pleas when he chose not to raise his claim on direct appeal.

To circumvent the *res judicata* bar, Piper relies on Haase v. Weber, 693 N.W.2d 668 (S.D. 2005), to show South Dakota has inconsistently applied the doctrine in habeas cases. Haase is an outlier for a couple reasons. First, unlike in this case where Piper has had multiple reviews of his claims, Haase's three habeas

applications were denied without a judge ever reviewing any of his grounds for relief.  Id. at 669.  Even so, only three of the five justices found fundamental fairness permitted him to get around "the procedural purgatory" Haase found himself in.  The two dissenting justices asserted the court's decision violated South Dakota's habeas statutes.  Id. at 670-75.  Second, the South Dakota Supreme Court made plain the case presented "a unique and troubling situation" and was decided "under the unique facts of this case."  Id. at 669-70.  It has proven so unique that, in the 20 years it has been in existence, no other South Dakota court has relied on Haase to circumvent application of the doctrine of *res judicata*.  A single case presenting "unique and troubling facts" does not demonstrate that South Dakota has been inconsistent in its application of *res judicata*.

The record shows Piper made a strategic decision to contest only his sentence and not the validity of his guilty pleas when he filed his brief with the South Dakota Supreme Court in May 2003 and also when he filed his first application for habeas relief in the state circuit court in August 2006.  Because South Dakota's *res judicata* doctrine is independent of federal law and, at that time of Piper's filings, the doctrine was firmly established, regularly followed, and readily ascertainable, Piper procedurally defaulted his constitutional claim relating to his guilty pleas.

Piper has not shown cause to excuse his default.  His counsel's belief that South Dakota law would allow Piper to withdraw his guilty pleas if he was successful in getting his sentence vacated does not establish cause.  See Marcyniuk, 39 F.4th at 995 ("In Coleman, the Supreme Court clearly stated that '[a]ttorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error'" (quoting Coleman v. Thompson, 510 U.S. 722, 753 (1991)).

**3. Piper's request for an evidentiary hearing to show he was not "at fault" for resentencing trial counsel's failure to investigate/ present mitigating evidence on fetal alcohol spectrum disorder and the ineffectiveness of state habeas counsel for failing to raise the issue.**

Piper seeks to develop evidence showing he was not "at fault" for all prior counsel's failure to discover that his mother drank alcohol while she was pregnant with him, that she abused alcohol during his childhood, that she was physically abusive, and that he suffers from brain damage consistent with fetal alcohol spectrum disorder ("FASD"). Piper contends his state habeas counsel's conduct in failing to discover trial counsel's deficiencies was grossly negligent, constitutes extraordinary misconduct, and amounts to breach of the duty of loyalty.

The United States Supreme Court has made plain that, unless a prisoner can satisfy the "stringent requirements" of 28 U.S.C. § 2254(e)(2), a federal court may not conduct an evidentiary hearing or otherwise consider evidence beyond the state court record on a claim based on ineffective assistance of state post-conviction counsel. Shinn v. Ramirez, 596 U.S. 366, 382 (2022). Section 2254(e)(2)(A) requires the prisoner to show: (a) the existence of "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable;" or (b) "a factual predicate that could not have been previously discovered through the exercise of due diligence." In addition, a prisoner must show that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(B).

Piper contends the district court abused its discretion when it denied an evidentiary hearing because the Supreme Court's decision in Shinn does not foreclose a hearing to determine whether a habeas petitioner was "at fault" for failing to develop the state court record. We need not reach that issue because the record

-10-

belies Piper's allegations of attorney negligence, misconduct, or "extreme departure from the minimum standards of professional conduct."

The district court methodically reviewed resentencing counsel's time entries and found trial counsel almost immediately began investigating Piper's mental health conditions and contacted potential mitigation experts and witnesses. The billing records show counsel consulted with at least one psychologist and explored potential psychiatric issues. Of significance, a note in September 2009 states: "Research FASD/ADHD/sociopathy." A November 2009 entry identifies "FASD/other mental health research." Another entry 12 days later states: "FASD (fetal alcohol) work-up." Piper has not challenged the district court's findings related to counsel's investigation of his mental health condition. In short, the records confirm counsel had frequent contact with Piper's family, sent a health questionnaire to Piper's mother, retained a capital mitigation specialist, received approval to have a psychologist appointed to the defense team, and hired a forensic neuropsychiatrist. Neither the psychologist nor the pediatrician mentioned FASD in their evaluation reports when Piper was 13 years old; neither retained trial mitigation psychologist nor neuropsychiatrist testified as to any suspicion of FASD; none of the psychiatrists whom the state called perceived Piper to have FASD; and counsel's mitigation investigation, which explored FASD, did not show signs of FASD.

Given the uncontroverted records, Piper faces an uphill battle trying to prove counsel conducted an inadequate mental health investigation or failed to appreciate the value of mitigating psychological evidence. The reality is the evidence in the record simply does not support Piper's claim that counsel failed to "notice red flags" indicating he suffered from a mental impairment, such as FASD. There was virtually no indication of the existence of FASD, let alone "red flags." The records show Piper's counsel hired experts and specialists to investigate whether Piper suffered from any mental condition, including FASD, but came up empty. Piper cultivates a statement from his mom in 1994, when Piper was 13 years old, indicating she consumed "some" alcohol while pregnant into a diagnosis or apparent case of FASD. The entirety of the statement transcribed by the doctor as part Piper's mom's request

for a second opinion as to potential explanations for Piper's impulsive behavior: "Mrs. Piper reports that she was anemic throughout her pregnancy. She smoked one pack of cigarettes per day and consumed some alcohol." Notably, after the doctor completed his evaluation, nowhere in the doctor's report, or anywhere else in the record, is there a mention of prenatal alcohol exposure or FASD as possible explanations for Piper's behavior.

Piper has proffered no credible basis showing there were "red flags" in the record that should have put all prior counsel on notice that he may suffer from FASD. "Reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." Rhines, 899 F.3d at 492 (quoting Rompilla v. Beard, 545 U.S. 374, 383 2005)). Based on the absence of evidence, Piper has presented no colorable claim that all prior counsel missed signs that he may suffer from FASD, let alone a basis warranting an evidentiary hearing. The district court did not abuse its discretion when it denied Piper's request for an evidentiary hearing.

### 4.    Trial counsel's impeachment of witness Thomas Curtis.

Piper met Thomas Curtis in 2000 while they were in custody together at the Lawrence County Jail. Curtis testified in person at each of Piper's trials. At the time of Piper's resentencing trial, Curtis was in custody in Utah. The State had Curtis brought back to South Dakota to testify via an interstate subpoena. Curtis testified about statements Piper made to him about his role in Poage's murder, which corroborated other evidence presented by the State. He also told the jury that Piper had concocted a plan to escape, a plan that included killing prison guards in the process. In addition, Curtis testified about Piper's lack of remorse as to his actions, both past and future.

Curtis appeared at the resentencing trial clad in a jail uniform. He told the jury that he was incarcerated on eight counts of distribution of cocaine. After trial was over, counsel discovered Curtis had been convicted of, and was awaiting sentencing on, four counts of giving a minor female cocaine and four counts of

raping her. Piper contends his counsel's failure to discover the truth about Curtis's criminal history and inform the jury that Curtis was awaiting sentencing on four rape convictions prejudiced him. Piper contends if jurors would have known the truth, a reasonable juror could have concluded that if Curtis was willing to lie about his criminal history to cover his own misdeeds, he would be willing to lie about Piper as well.

The South Dakota Supreme Court disposed of Piper's claim on Strickland's[5] prejudice prong, concluding Piper had failed to show a more thorough investigation of Curtis's criminal history would have "yielded meaningful impeachment information." Piper IV, 936 N.W. 2d at 815. Under AEDPA, deference must be given to a state court's adjudication of both the law and facts. See 28 U.S.C. § 2254(d). Pointing to defense counsel's admissions that Curtis's rape convictions would have constituted very important impeachment evidence and counsel's opinion that advising the jury of those convictions might have affected the jury's verdict, Piper asserts the South Dakota Supreme Court's decision was based on an unreasonable determination of fact and was an unreasonable application of Strickland.

The district court found that deciding the appropriate standard of review applicable to Piper's claim was complicated because it was difficult to decipher from the records whether the South Dakota Supreme Court treated Curtis's rape convictions as part of the record or not. In the district court's view, resolving the standard of review issue was unnecessary because, even under *de novo* review, Piper's claim failed. The district court reasoned that impeaching Curtis with his rape convictions would not have made a different outcome reasonably probable because:

---

[5]The familiar two-pronged standard set out in Strickland v. Washington, 466 U.S. 668 (1984), requires a petitioner alleging ineffective assistance of counsel to show: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. Because both prongs must be satisfied, a court may decide a claim by addressing either prong. Ford v. United States, 917 F.3d 1015, 1021 (8th Cir. 2019).

(1) other witnesses provided similar testimony making Curtis's testimony cumulative; (2) counsel effectively called into question Curtis's credibility so the impact of the rape convictions would have been "marginal;" and (3) Curtis's rape convictions would not have overcome the "gruesome facts" of Poage's murder that caused the jury to unanimously recommend a death sentence.

Piper's arguments on appeal do not show error in the district court's findings or analysis. Piper overlooks defense counsel's efforts that raised questions about Curtis's credibility, even without the rape convictions. When asked by defense counsel how many felonies he had been convicted of over the years, Curtis responded: "Approximately two that I have been convicted of. I have been accused of many more but I have been convicted of I think two." Turning to the reason for his current incarceration, Curtis acknowledged that a jury convicted him on eight charges of felony possession with intent to distribute cocaine and was awaiting sentencing. When asked how much cocaine was involved, Curtis testified, "I did not have any cocaine, I was accused of having cocaine." Curtis agreed with counsel's characterization of his situation as "taking a false rap." Curtis confirmed his position a second time, telling the jury that he had been falsely convicted on all eight distribution charges. Even without the rape convictions, Piper's counsel undermined Curtis's credibility.

More importantly, Piper incorrectly assumes that if the jurors knew about Curtis's rape convictions, they would have disregarded all of Curtis's "damaging" testimony, including Piper's escape plans and lack of remorse. Curtis was not the only witness to testify about these potentially aggravating factors for the jury to evaluate. Piper has not contested the district court's finding that at least two other witnesses echoed Curtis's testimony indicating Piper demonstrated a lack of remorse for murdering Poage. With regard to Piper's plans to escape from custody, Kenneth Tingley's testimony from Piper's first trial was read to the jury because Tingley was unavailable for the resentencing trial. Tingley, who was in custody with Piper in the Lawrence County Jail, testified that Piper offered him money to kill a female guard so he could escape from custody. Tingley explained that Piper discussed the escape

-14-

plans with fellow inmates Tobe Givens and "Tom." Givens testified at Piper's first trial that Piper offered him, Tingley, and Curtis money to "take out" two prison guards and help Piper escape. When the State expressed difficulty locating Givens for trial, it sought permission to read Givens's prior testimony into the record. The circuit judge denied the request on the ground that Givens's testimony was cumulative to Curtis's and Tingley's testimony.

To get around the cumulative aspect of Curtis's testimony, Piper asks us to treat Curtis's testimony as more significant because he testified in person. The circuit judge, however, instructed the jury to give the same consideration to Tingley's testimony as it would for testimony from live witnesses. Piper's request to assign more weight to Curtis's testimony is without factual or legal support.

Lastly, Piper argues Curtis's testimony was significant because this was not "a slam-dunk case for the death penalty." Piper highlights that another jury sentenced co-defendant Darrell Hoadley to life imprisonment. The district court found that although Curtis's testimony about Piper's escape plans and lack of remorse hurt Piper's case, "it paled in comparison to the gruesome facts of Poage's murder." While there has been extensive finger pointing as to who was the worst perpetrator that participated in Poage's murder, the state circuit court, who heard and saw all the evidence the first time, identified Piper as the leader of the three men involved in Poage's murder. Piper I, 709 N.W.2d at 802. On review, the South Dakota Supreme Court added to that assessment: "That Piper is a vicious schemer and leader is further evidenced by his actions since his imprisonment, including escape plots as well as schemes to murder prison guards and his co-defendant [Elijah] Page, whom he suspected of cooperating with the police against him." Id. There is nothing in the record to suggest that this assessment of Piper was different during his resentencing trial.

In comparison, the South Dakota Supreme Court determined that "after extensive review of the record," Hoadley was "a follower," Hoadley's degree of criminal involvement was not equal to Piper's, Hoadley did not joke or taunt Poage

-15-

during the attack, and Hoadley was never mentioned as the instigator of the murder. Id. at 815-16. Prison officers, who worked with Piper, Page, and Hoadley, testified that Piper has a leadership personality and described the other two men as "followers." Piper III, 842 N.W. at 350-51. In addition to the "genuine and substantial difference between the actions of Piper and Hoadley," Hoadley showed remorse for his actions while Piper "showed a complete lack of remorse." Piper I, 709 N.W.2d at 816.

Piper is unable to refute the district court's determination that the most damaging evidence causing the jury to unanimously recommend a death sentence was the "horrendous facts" of the murder—which lasted four hours and involved torture and taunting as Poage begged for his life—and Piper's more extensive level of involvement and culpability. On this well-developed record, impeaching Curtis with his convictions for rape would not have caused a reasonable juror to reach a different sentencing decision. Even applying *de novo* review, a more favorable standard to Piper, he cannot show prejudice for his counsel's failure to discover and impeach Curtis with his rape convictions.

### 5. Trial counsel's purported failure to investigate and rebut the State's assertion that Sister Gabriella Crowley violated prison rules during her interactions with Piper.

Piper acknowledges there was little question that the State would be able to prove the existence of one or more statutory aggravating factors. The defense strategy was to show Piper was capable of change and Piper had, in fact, changed. Sister Gabriella Crowley, a nun who had visited Piper in jail over a three-year period prior to his resentencing trial, testified about Piper's efforts to change and his transformation. She explained how Piper was studying to become a Catholic and she served as his godmother at his 2008 baptism. Sister Crowley told the jury that during her visits with Piper, she and Piper discussed spiritual matters, talked about his family, and conferred about his studies. According to Piper, on cross-examination, the State undermined the impact and effectiveness of Sister Crowley's testimony when it suggested Piper manipulated and used Sister Crowley to violate

prison rules. Piper now claims there was no violation of any prison rules and his counsel's failure to discover this fact was deficient and prejudiced him.

While in jail, Sister Crowley wrote a letter on Piper's behalf to a female inmate. When the prosecutor asked Sister Crowley if she knew that she was violating prison rules by writing the letter, she explained that she did not think so at the time but, looking back, she believed she may have broken prison rules. When asked if she thought Piper had "manipulated your friendship," Sister Crowley replied that she did not view "it that way." Because the prosecutor suggested to the jury that Piper had manipulated Sister Crowley, Piper contends the State "eviscerated" his mitigating evidence and turned it into "an aggravating twist."

During the trial, a correctional officer testified that inmates are prohibited from communicating with each other through third parties. The letter written by Sister Crowley was introduced as evidence, but an official prison policy, if there was one, was never presented to the jury. In the letter, Sister Crowley explained that she was writing on Piper's behalf because inmates could not write to each other. During the state habeas proceedings, defense counsel testified that after the trial his paralegal spoke with the warden and the warden told her there was no prison policy prohibiting inmate-to-inmate communications via third parties. The South Dakota Supreme Court rejected Piper's ineffective assistance of counsel claim on the merits, reasoning whether the letter actually violated prison policy remained "unsettled" and Piper had not shown that his counsel acted unreasonably or that the alleged error prejudiced the outcome. Piper IV, 936 N.W. at 816.

In the district court, Piper argued the South Dakota Supreme Court made an unreasonable finding of fact when it found it was "still unsettled" whether Sister Crowley's letter violated prison policy. Piper acknowledged that the paralegal's affidavit setting forth what the warden told her was not made part of the state habeas record. Based on the lack of supporting evidence, the district court found it was reasonable for the South Dakota Supreme Court to find the dispute over whether Sister Crowley's letter violated prison policy "unsettled." With that finding, it then

-17-

flowed naturally for the South Dakota Supreme Court to conclude Piper's claim (his counsel acted deficiently when he failed to refute the State's suggestion that Piper manipulated Sister Crowley) was based only on speculation. Even if Piper's counsel had established the letter did not violate prison policy, the district court concluded the South Dakota Supreme Court's decision finding no prejudice was reasonable because the aggravating evidence was so "weighty."

On appeal, Piper argues there was evidence in the record establishing there was no prison policy prohibiting inmate-to-inmate communications and refers to defense counsel's testimony on cross-examination about what his paralegal told him she learned from speaking to the warden after trial. But "the existence of some contrary evidence in the record does not suffice to show that the state court's factual determination was unreasonable." Cole v. Roper, 783 F.3d 707, 711 (8th Cir. 2015). Piper also contends the district court's acceptance of the state court's finding of no prejudice unreasonably assumes every juror would reject the mitigating value of Piper's religious awakening and efforts to change.

Piper places an inordinate amount of weight on the merits of whether Sister Crowley violated prison policy and the impact that issue had on the jury. The undisputed record shows Sister Crowley understood she was writing the letter because Piper was not allowed to communicate with another inmate. Piper himself recognized during a state habeas hearing that he understood the prison restricted inmate-to-inmate communications, stating "clearly inmates writing to one another is a violation [and] is not allowed." At the time Piper asked Sister Crowley to assist him in communicating with the female inmate, both he and Sister Crowley believed the conduct was prohibited. Establishing definitively whether a prison policy was violated would have had little to no influence on the jurors, as Sister Crowley denied the suggestion that Piper was using his friendship with her to manipulate her.

Further, Sister Crowley was not Piper's only witness. She was only a part of his case. Piper's arguments ignore the extensive mitigating evidence that was before the jury and unrefuted, including Piper's difficult upbringing, his parents' failure to

-18-

provide him the help he needed, his youth at the time of the offense, the effects of group dynamics, his history of drug abuse, psychological conditions that may lessen culpability, as well as other positive changes and things Piper had done while incarcerated. In the end, the jury found the aggravating circumstances outweighed Piper's mitigating factors.

Piper has failed to show the prosecutor's suggestion that Piper manipulated Sister Crowley had a substantial and injurious effect or influence on the jury's sentencing decision. A writ of habeas corpus "is designed to guard against extreme malfunctions in the state criminal justice systems; it is not a substitute for ordinary error correction through appeal." Bookwalter v. Vandergriff, 73 F.4th 622, 624 (2023) (cleaned up). Because Piper has failed to demonstrate that, without the suggestion of manipulation, there is a reasonable probability that a juror would have voted for life imprisonment rather than capital punishment, he is not entitled to habeas relief.

### 6. The denial of relief due to cumulative prejudice.

Finally, Piper contends he is entitled to habeas relief due to the cumulative prejudice of the constitutional violations in his case. Piper has not met his burden of showing error entitling him to relief, let alone cumulative errors. Further, this Court has held that "habeas relief will not be granted based on the cumulative effect of attorney errors." McLaughlin v. Precythe, 9 F.4th 819, 830-31 (8th Cir. 2021) (cleaned up); see also Wainwright v. Lockhart, 80 F.3d 1226, 1233 (8th Cir. 1996) ("Errors that are not unconstitutional individually cannot be added together to create a constitutional violation. Neither cumulative effect of trial errors nor cumulative effect of attorney errors are grounds for habeas relief."). Piper's claim for habeas relief based on cumulative prejudice is unavailable in this Court.

## III. CONCLUSION

We affirm the district court's denial of Piper's application for relief under 28 U.S.C. § 2254.

_____